■ In the Matter of BRIAN BOTSFORD, Appellant, v JOHN BERTONI, as Mayor of the Village of Endicott, et al., Respondents. [977 NYS2d 497]—

Peters, P.J. Appeal from a judgment of the Supreme Court (Lebous, J.), entered July 31, 2012 in Broome County, which

dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Mayor of the Village of Endicott terminating petitioner's employment.

Petitioner was employed as a fire inspector by the Village of Endicott Fire Department and was the president of its firefighters union. In May 2009, he was charged with multiple counts of misconduct pursuant to Civil Service Law § 75 after engaging in a verbal altercation with Stephen Hrustich, the Fire Chief, concerning Hrustich's directive that all firefighters undergo a respiratory physical examination. The charges alleged that, upon arriving at the fire station to address the matter, petitioner stated to Hrustich, "What the f . . . is your problem" (hereinafter the first statement) and, after a verbal warning, stated, "I am the f . . . ing [u]nion president and you cannot do a f . . . ing thing to me," or words to that effect (hereinafter the second statement). Shortly after the disciplinary charges were filed against petitioner, he filed an improper practice charge with the Public Employment Relations Board (hereinafter PERB) alleging that respondents' decision to discipline him amounted to anti-union animus.

At the hearing on the disciplinary charges, petitioner acknowledged that he had made the first statement but denied making the second statement, testifying that he instead stated, "I'm the union president and I'm acting in my capacity as the union president." Crediting the testimony of Hrustich and a firefighter who witnessed the encounter to the effect that petitioner in fact made the second statement, a Hearing Officer found petitioner guilty of the charges and recommended a period of unpaid suspension. Respondent John Bertoni, the Mayor of respondent Village of Endicott, sustained the findings of guilt but modified the period of unpaid suspension.[1]

During the March 2010 PERB hearing, held shortly after Bertoni had sustained the findings in the disciplinary hearing, petitioner again testified that he did not make the second statement. Based upon this testimony and his testimony at the disciplinary hearing, petitioner was served with another notice in June 2011 charging him with misconduct amounting to perjury and making a false official statement, as well as incompetence for failure to be truthful. Following a hearing, a Hearing Officer issued a recommendation finding petitioner guilty of the charges set forth above and recommending that his employment be terminated. Bertoni adopted the findings and penalty

---

1. Petitioner commenced a CPLR article 78 proceeding challenging the determination, and Supreme Court dismissed the petition. Petitioner did not appeal.

of the Hearing Officer, and petitioner commenced this CPLR article 78 proceeding challenging the determination. Supreme Court dismissed the petition and this appeal ensued.[2]

As a preliminary matter, we cannot agree with the concurrence/dissent that subjecting petitioner to disciplinary action under these circumstances deprived him of his rights under Civil Service Law § 75, violates public policy or is otherwise improper. Where a witness testifies falsely under oath, he or she may properly be subject to additional proceedings and sanctions (*see Brogan v United States*, 522 US 398, 404-405 [1998]; *Lachance v Erickson*, 522 US 262, 267-268 [1998]; *United States v Dunnigan*, 507 US 87, 94-95 [1993]; *Matter of Torres v Kerik*, 299 AD2d 214, 214 [2002], *lv denied* 99 NY2d 508 [2003]). Indeed, the United States Supreme Court has squarely held— under circumstances indistinguishable from those present here—that "a [g]overnment agency may take adverse action against an employee because the employee made false statements in response to an underlying charge of misconduct" (*Lachance v Erickson*, 522 US at 268). And, in so doing, the Court specifically rejected the argument—proffered by the concurrence/dissent here—that to permit the initiation of perjury charges under such circumstances may "coerce[ ] [individuals] into admitting the misconduct, whether they believe that they are guilty or not, in order to avoid the more severe penalty of removal possibly resulting from a falsification charge" (*id.* at 267 [internal quotation marks omitted]). Simply put, "[p]etitioner was not penalized for exercising his statutory right to a hearing on the underlying charges, but for giving false testimony at that hearing" (*Matter of Torres v Kerik*, 299 AD2d at 214; *see Lachance v Erickson*, 522 US at 267-268).

Reversal is required, however, because Bertoni should have been disqualified from reviewing the Hearing Officer's recommendations. To be sure, an administrative decision maker is not deemed biased or disqualified merely on the basis that he or she reviewed a previous administrative determination and ruled against the same employee, or presided over a prior proceeding involving a similar defense or similar charges (*see e.g. Matter of Compasso v Sheriff of Sullivan County*, 29 AD3d 1064, 1064-1065 [2006]; *Matter of Hart v Coombe*, 229 AD2d 754, 755

---

2. We note that, while petitioner incorrectly invoked the arbitrary and capricious standard of review before Supreme Court, the petition raised a question of substantial evidence and, therefore, should have been transferred to this Court after Supreme Court disposed of the other objections that could have terminated the proceeding (*see* CPLR 7804 [g]; *Matter of Brunner v Bertoni*, 91 AD3d 1100, 1101 n [2012]; *Matter of Thibodeau v Northeastern Clinton Cent. School Bd. of Educ.*, 39 AD3d 940, 941 [2007]).

[1996], *lv denied* 89 NY2d 802 [1996]; *Matter of Joseph v Stolzenberg*, 198 AD2d 506, 506 [1993]; *see also Matter of Longton v Village of Corinth*, 57 AD3d 1273, 1276 [2008], *lv denied* 13 NY3d 709 [2009]). However, where, as here, there is evidence indicating that the administrative decision maker may have prejudged the matter at issue, disqualification is required (*see Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d 158, 161-164 [1990]).

In his decision in the first disciplinary proceeding, Bertoni not only agreed with the Hearing Officer's report, but stated his own opinion that "I do not believe [petitioner's] account of what was said." In his affidavit submitted in petitioner's CPLR article 78 proceeding challenging the first disciplinary determination, Bertoni went one step further. In that document, while explaining the portion of his decision addressing petitioner's version of the second statement, Bertoni averred that he found that version "incredible." While the falsity of petitioner's account of the second statement was not at issue in the second proceeding, as that issue was conclusively determined in the first proceeding, the central issue in the second proceeding was whether petitioner's false testimony was given knowingly and willingly. Thus, after concluding that he did not believe petitioner's account of what was said and that petitioner's version was "incredible," Bertoni put himself in the position of determining whether the statement that petitioner did in fact make was made knowingly and willfully. These questions are inextricably intertwined, and Bertoni's statements regarding petitioner's testimony in the first proceeding were such that "a disinterested observer may conclude that [Bertoni] ha[d] in some measure adjudged the facts" surrounding the knowing and willful question "in advance of hearing it" (*Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d at 162 [internal quotation marks and citations omitted]; *see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 180 AD2d 883, 884 [1992], *affd* 80 NY2d 531 [1992]). Accordingly, Bertoni should have recused himself. Because he did not, respondents' determination was affected by an error of law. The proper remedy is to remit the matter for a de novo review of the present record and the Hearing Officer's recommendations by a qualified and impartial individual (*see Matter of Correia v Incorporated Vil. of Northport*, 12 AD3d 599, 601 [2004]; *Matter of Memmelaar v Straub*, 181 AD2d 980, 982 [1992]; *see also Matter of 1616 Second Ave. Rest. v New York State Liq. Auth.*, 75 NY2d at 165).

McCarthy and Spain, JJ., concur.

Egan Jr., J. (concurring in part and dissenting in part). I agree with the majority that Supreme Court's judgment must be reversed and that the underlying determination must be annulled. However, for the reasons that follow, I am of the view that the appropriate remedy is not to remit this matter for a de novo review of the Hearing Officer's recommendation, but, rather, to grant the petition in its entirety. Accordingly, and to that extent, I respectfully dissent.

I think it would be helpful to keep this proceeding in its proper perspective. Stephen Hrustich, the Fire Chief, and petitioner, a fire inspector for the Village of Endicott Fire Department and the president of its firefighters union, engaged in a heated discussion concerning Hrustich's directive that all firefighters undergo a respiratory physical examination. Words were said back and forth, during the course of which petitioner admittedly stated to Hrustich, "What the f . . . is your problem." According to Hrustich, he then warned petitioner that he was "way out of line" and that he should watch his tone, in response to which petitioner said, "I'm the f . . . ing union president and there's nothing you can f . . . ing do about it." Precisely what words were uttered in the context of this one sentence has now become the center of this entire proceeding.

As a result of the foregoing exchange, Hrustich—as was his right—charged petitioner with three specifications of misconduct, including insubordination, and ordered that petitioner immediately be suspended without pay for 30 days. Petitioner—as was his right—requested a hearing pursuant to Civil Service Law § 75, during the course of which Hrustich, petitioner and others testified as to their recollection of the encounter. In this regard, petitioner admitted that he told Hrustich, "I'm the union president and I'm acting in my capacity as the union president," but denied that this sentence was punctuated by profanity. At the conclusion of the hearing, the Hearing Officer believed the employer's version of the exchange, found petitioner guilty of misconduct and recommended that petitioner be suspended for 20 working days without pay (subject to a credit for the previously ordered unpaid suspension). Respondent John Bertoni, the Mayor of respondent Village of Endicott, sustained the finding of guilt but—as was his right—deemed the penalty imposed to be, among other things, insufficient and ordered petitioner to serve a total of 60 days of unpaid suspension. In the interim, the firefighters union filed an improper practice charge against respondents with the Public Employment Relations Board (hereinafter PERB), and Hrustich and petitioner

again testified as to the disputed verbal exchange—each sticking to their guns regarding their recollection of the event.

Having read the transcript of the initial disciplinary proceeding, I defer to the Hearing Officer's finding that petitioner indeed said, "I'm the f . . . ing union president and there's nothing you can f . . . ing do about it," and I agree that petitioner's words would constitute misconduct under any circumstances—particularly when uttered to his superior officer. I also acknowledge that the Mayor's decision to increase the suspension imposed is sustainable. What happened next, however, is wrong.

Based upon his testimony at the November 2009 disciplinary hearing and the March 2010 PERB hearing, petitioner was served with a second notice of misconduct charging him with, among other things, perjury and failure to be truthful. This set of charges apparently stemmed from Hrustich's belief that, because the Hearing Officer did not credit petitioner's testimony during the initial disciplinary hearing and because petitioner continued to deny—during the course of the subsequent PERB hearing—that he used profanity with respect to the contested sentence, petitioner necessarily gave false testimony. To my analysis, permitting a subsequent disciplinary proceeding to be commenced under these circumstances not only violates public policy but, more to the point, effectively places a public employee such as petitioner in the untenable position of having to choose between exercising his or her fundamental right to testify—at the risk of incurring additional disciplinary charges and suffering an eventual loss of employment—or foregoing his or her rights, remaining silent and hoping for a lesser penalty.

There is no question that a public employee subject to removal or other disciplinary action is afforded various fundamental rights under Civil Service Law § 75, including—insofar as is relevant here—the right to a hearing and the right "to summon witnesses in his [or her] behalf" (Civil Service Law § 75 [2]), the latter of which surely encompasses the right to testify in one's own defense. And while I certainly am not suggesting that petitioner's right to present a defense (or to testify in support of the improper practice charge) includes the right to offer false testimony or otherwise suborn perjury, I also do not believe that petitioner should have been subject to further disciplinary action merely because (1) the Hearing Officer who presided over the first disciplinary proceeding credited the employer's version of the sentence, and (2) despite such finding, petitioner continued to deny—during the course of the ensuing PERB hearing—that he twice used profanity with respect to the second sentence he uttered to Hrustich.

In this regard, it must be remembered that petitioner did not lose his job because—as the initial Hearing Officer found—he used profanity in the context of both of his statements to Hrustich; that demonstrated misconduct only resulted in the imposition of a 60-day unpaid suspension. Rather, petitioner lost his job *solely* because—in the context of exercising his right to present a defense and/or testifying in support of the improper practice charge—he denied (or continued to deny) that he used the "F" word in the second sentence spoken to Hrustich. Arguably, petitioner would have been better off if he simply had admitted the initial misconduct—notwithstanding the fact that he truly may have believed that he did not actually utter the offending words—and elected to forgo either his right to a hearing or his right to testify on his own behalf, as it was—in effect—his invocation of his rights under Civil Service Law § 75 that cost him his job. The bringing of the second set of charges under these circumstances is really a stretch, and the penalty obtained—dismissal—is totally out of proportion to the act. The irony of what occurred here aside, I believe that the procedure adopted by the employer—if allowed to stand—will have a chilling effect upon a public employee's right to present a defense and testify on his or her own behalf and, for that reason, I agree that the underlying determination must be annulled.[3]

Moreover, even if I did not otherwise have misgivings regarding the procedure employed here, I nonetheless would be compelled to grant the petition because the record as a whole is not, to my analysis, sufficient to support the inference of knowledge and willfulness required to sustain the charges at issue. Accordingly, for all these reasons, I would reverse Supreme Court's judgment, annul the challenged determination, grant the petition in its entirety and restore petitioner to his former position—complete with back pay and benefits.

Ordered that the judgment is reversed, on the law, without costs, determination annulled, and matter remitted to respondent Village of Endicott for further proceedings not inconsistent with this Court's decision.

---

**3.** I also am left to wonder what would have happened if the outcome of the original disciplinary proceeding had been different. In other words, if the Hearing Officer had credited petitioner's version of the events and found petitioner to be not guilty of misconduct, would the Mayor have initiated disciplinary charges against Hrustich for giving false testimony at petitioner's disciplinary hearing?