# UNITED STATES *v.* DUNNIGAN

No. 91–1300.   Argued December 2, 1992—Decided February 23, 1993

88

KENNEDY, J., delivered the opinion for a unanimous Court.

*Paul J. Larkin, Jr.,* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Mueller,* and *Deputy Solicitor General Bryson.*

*Brent E. Beveridge* argued the cause and filed a brief for respondent.

JUSTICE KENNEDY delivered the opinion of the Court.

The question presented is whether the Constitution permits a court to enhance a defendant's sentence under United

States Sentencing Commission, Guidelines Manual § 3C1.1 (Nov. 1989), if the court finds the defendant committed perjury at trial. We answer in the affirmative.

## I

Respondent, Sharon Dunnigan, was charged in a single count indictment with conspiracy to distribute cocaine in violation of 21 U. S. C. § 846. After entering a plea of not guilty, she stood trial.

The case in chief for the United States consisted of five witnesses who took part in, or observed, respondent's cocaine trafficking during the summer of 1988. The first witness was Freddie Harris, a cocaine dealer in Charleston, West Virginia. Harris testified that respondent traveled between Charleston and Cleveland, Ohio, numerous times during the summer in question to purchase cocaine for him. He further stated that either he or his associate John Dean accompanied respondent on several of these trips. Dean was the second witness, and he recounted his trips to Cleveland with respondent during the same period to purchase cocaine. He also described meetings with both respondent and Harris for the purpose of delivering cocaine.

Three more Government witnesses followed. Andre Charlton testified that respondent, at her own apartment, delivered several ounces of cocaine to Charlton and Harris. Charlton also attested to receiving cocaine from Dean which Dean said he and respondent had bought in Cleveland. Tammy Moore testified next. She described conversations during which respondent vouched for the high quality of the cocaine in Cleveland and suggested Moore accompany her on a trip to Cleveland. Then came the testimony of Wynema Brown, who repeated respondent's admissions of trips to Cleveland to purchase cocaine for Harris. Brown also stated she saw cocaine powder at respondent's apartment and witnessed respondent and her daughter convert the

powder into crack cocaine for the daughter to sell. This ended the Government's case in chief.

Respondent elected to take the stand and was the sole witness in her own defense. She denied all criminal acts attributed to her. She admitted going to Cleveland with Harris once but claimed it was for an innocent purpose, not to buy or sell cocaine. She admitted knowing John Dean but denied traveling with him to Cleveland. Last, she denied knowing that cocaine was brought into or sold from her apartment. On cross-examination, the Government questioned respondent regarding the testimony of the five prosecution witnesses. Respondent denied their inculpatory statements and said she had not possessed or distributed cocaine during the summer in question or at any other time. The Government also asked whether Edward Dickerson had been in her apartment or bought crack cocaine from her. Respondent answered no.

The defense rested, and the Government began its rebuttal with the testimony of Dickerson. He testified to purchasing crack cocaine from respondent on July 12, 1988, in a transaction monitored by law enforcement authorities. The Government also recalled Moore, who claimed respondent sold her crack cocaine about five times and provided cocaine powder to her and respondent's daughter to convert into crack cocaine for resale. According to Moore, the money from the resale was paid over to respondent. The jury returned a verdict of guilty.

Respondent was sentenced pursuant to the United States Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual (Nov. 1989). Her base offense level was set at 22, and the Government requested that the base be increased by two offense levels under USSG § 3C1.1, entitled "willfully obstructing or impeding proceedings," because respondent perjured herself at trial. After arguments from both sides, the District Court ruled on the request:

"The court finds that the defendant was untruthful at trial with respect to material matters in this case. The defendant denied her involvement when it is clear from the evidence in the case as the jury found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment, and by virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels." App. 29.

Based upon the enhanced offense level 24 and a criminal history category I, the District Court sentenced respondent to 51 months' incarceration, which was at the low end of the Guidelines range.

Respondent appealed her sentence, and the Court of Appeals reversed the District Court's decision to increase respondent's offense level under USSG § 3C1.1. 944 F. 2d 178 (CA4 1991). The Court of Appeals did not take issue with the District Court's factual findings or rule that further findings were necessary to support a § 3C1.1 enhancement. Instead, the court held that a § 3C1.1 enhancement based on a defendant's alleged perjury at trial would be unconstitutional. The court reasoned that "every defendant who takes the stand and is convicted [would] be given the obstruction of justice enhancement." *Id.*, at 183. Citing some of the incentives for an accused to elect not to testify, including the risk of impeachment by prior convictions, the court ruled that a mechanical sentencing enhancement for testifying was unconstitutional: "With an automatic § 3C1.1 enhancement added to the ante, the defendant may not think testifying worth the risk." *Id.*, at 184.

Referring to *United States* v. *Grayson*, 438 U. S. 41 (1978), where we upheld a sentence increase based on an accused's false testimony at trial, the Court of Appeals found that precedent distinguishable on two grounds. First, in *Grayson* we justified the sentence increase as based on the

District Court's assessment of the defendant's greater need for rehabilitation. *Id.*, at 51–53. The Court of Appeals thought this justification was inapplicable, viewing the § 3C1.1 enhancement as a punishment for obstructing justice without the time and expense of a separate perjury prosecution. 944 F. 2d, at 184. Second, the *Grayson* Court cautioned that "[n]othing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false." 438 U. S., at 55. According to the Court of Appeals, "[t]he guidelines supply precisely the 'wooden or reflex' enhancement disclaimed by the Court," 944 F. 2d, at 184, and this rigidity "makes the § 3C1.1 enhancement for a disbelieved denial of guilt under oath an intolerable burden upon the defendant's right to testify in his own behalf," *id.*, at 185.

Over a dissent by four of its judges, the Court of Appeals declined to rehear the case en banc. 950 F. 2d 149 (CA4 1991). We granted certiorari. 504 U. S. 940 (1992).

## II

### A

Sentencing Guideline § 3C1.1 states in full: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the [defendant's] offense level by 2 levels." USSG § 3C1.1 (Nov. 1989). See also USSG § 3C1.1 (Nov. 1992). Both parties assume the phrase "impede or obstruct the administration of justice" includes perjury, and the commentary to § 3C1.1 is explicit in so providing. In pertinent part, the commentary states:

> "This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the dis-

position of criminal charges, in respect to the instant offense.

.        .        .        .        .

"1. The following conduct, while not exclusive, may provide a basis for applying this adjustment:

.        .        .        .        .

"(c) testifying untruthfully or suborning untruthful testimony concerning a material fact, . . . during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding." USSG § 3C1.1, comment., n. 1(c) (Nov. 1989).

See also USSG § 3C1.1, comment., n. 3(b) (Nov. 1992) ("The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies: . . . (b) committing, suborning, or attempting to suborn perjury").

Were we to have the question before us without reference to this commentary, we would have to acknowledge that some of our precedents do not interpret perjury to constitute an obstruction of justice unless the perjury is part of some greater design to interfere with judicial proceedings. *In re Michael,* 326 U. S. 224, 228 (1945); *Ex parte Hudgings,* 249 U. S. 378, 383 (1919). Those cases arose in the context of interpreting early versions of the federal criminal contempt statute, which defined contempt, in part, as "misbehavior of any person . . . as to obstruct the administration of justice." 28 U. S. C. § 385 (1940 ed.) (Judicial Code § 268), derived from the Act of Mar. 2, 1831, Rev. Stat. § 725. See also 18 U. S. C. § 401(1) (same).

In *Hudgings* and *Michael,* we indicated that the ordinary task of trial courts is to sift true from false testimony, so the problem caused by simple perjury was not so much an obstruction of justice as an expected part of its administration. See *Michael,* 326 U. S., at 227–228. Those cases, however, were decided against the background rule that the contempt power was to be confined to "'the least possible power adequate'" to protect "the administration of justice

against immediate interruption of its business." *Id.*, at 227 (quoting *Anderson* v. *Dunn*, 6 Wheat. 204, 231 (1821)).   In the present context, on the other hand, the enhancement provision is part of a sentencing scheme designed to determine the appropriate type and extent of punishment after the issue of guilt has been resolved.   The commission of perjury is of obvious relevance in this regard, because it reflects on a defendant's criminal history, on her willingness to accept the commands of the law and the authority of the court, and on her character in general.   Even on the assumption that we could construe a sentencing guideline in a manner inconsistent with its accompanying commentary, the fact that the meaning ascribed to the phrase "obstruction of justice" differs in the contempt and sentencing contexts would not be a reason for rejecting the Sentencing Commission's interpretation of that phrase.   In all events, the Commission's interpretation is contested by neither party to this case.

In determining what constitutes perjury, we rely upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U. S. C. § 1621.   A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.   See § 1621(1); *United States* v. *Debrow*, 346 U. S. 374, 376 (1953); *United States* v. *Norris*, 300 U. S. 564, 574, 576 (1937).   This federal definition of perjury by a witness has remained unchanged in its material respects for over a century.   See *United States* v. *Smull*, 236 U. S. 405, 408, and n. 1 (1915) (tracing history of § 1621's predecessor, Act of Mar. 4, 1909, ch. 321, § 125, 35 Stat. 1111).   It parallels typical state-law definitions of perjury, see American Law Institute, Model Penal Code § 241.1 (1985); 4 C. Torcia, Wharton's Criminal Law § 601 (14th ed. 1981), and has roots in the law dating back to at least the Perjury Statute of 1563, 5 Eliz. I, ch. 9, see Gordon, The Invention of a Common Law

Crime: Perjury and the Elizabethan Courts, 24 Am. J. Legal Hist. 145 (1980). See also 1 Colonial Laws of New York, 1664–1719, ch. 8, pp. 129–130 (reprinting "An Act to prevent wilfull Perjury," enacted Nov. 1, 1683).

Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same, under the perjury definition we have set out. See USSG § 6A1.3 (Nov. 1989); Fed. Rule Crim. Proc. 32(c)(3)(D). See also *Burns* v. *United States*, 501 U. S. 129, 134 (1991). When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that enhancement is required is sufficient, however, if, as was the case here, the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury. See App. 29 ("The court finds that *the defendant was untruthful at trial with respect to material matters* in this case. [B]y virtue of her failure to give truthful testimony on material matters *that were designed to substantially affect the outcome of the case,* the court concludes that the false testimony at trial warrants an upward adjustment by two levels" (emphasis added)). Given the numerous witnesses who contradicted respondent regarding so many facts on which she could not

have been mistaken, there is ample support for the District Court's finding.

## B

We turn next to the contention that an enhanced sentence for the willful presentation of false testimony undermines the right to testify. The right to testify on one's own behalf in a criminal proceeding is made explicit by federal statute, 18 U. S. C. §3481, and, we have said, it is also a right implicit in the Constitution, see *Rock* v. *Arkansas*, 483 U. S. 44, 51–53 (1987); *Nix* v. *Whiteside*, 475 U. S. 157, 164 (1986).

Respondent cannot contend that increasing her sentence because of her perjury interferes with her right to testify, for we have held on a number of occasions that a defendant's right to testify does not include a right to commit perjury. *Id.*, at 173; *United States* v. *Havens*, 446 U. S. 620, 626 (1980); *Grayson*, 438 U. S., at 54. Nor can respondent contend §3C1.1 is unconstitutional on the simple basis that it distorts her decision whether to testify or remain silent. Our authorities do not impose a categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights. See *Bordenkircher* v. *Hayes*, 434 U. S. 357, 365 (1978); *McGautha* v. *California*, 402 U. S. 183, 216–217 (1971); *United States* v. *Knox*, 396 U. S. 77, 82–83 (1969).

No doubt to avoid these difficulties, respondent's argument comes to us in a different form. It is that §3C1.1 carries a risk that a district court will order enhancement even when a defendant's testimony is truthful, either because the court acts without regard to the truth or makes an erroneous finding of falsity. That §3C1.1 creates such a risk, respondent claims, makes the enhancement unconstitutional. This argument does not survive scrutiny.

The concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty is dispelled by our earlier explanation that if an accused challenges a sentence increase based on perjured testi-

mony, the trial court must make findings to support all the elements of a perjury violation in the specific case. And as to the risk of incorrect findings of perjury by district courts, that risk is inherent in a system which insists on the value of testimony under oath. To uphold the integrity of our trial system, we have said that the constitutionality of perjury statutes is unquestioned. *Grayson, supra,* at 54. See also *Nix, supra,* at 173–174; *Havens, supra,* at 626–627. The requirement of sworn testimony, backed by punishment for perjury, is as much a protection for the accused as it is a threat. All testimony, from third-party witnesses and the accused, has greater value because of the witness' oath and the obligations or penalties attendant to it. Cf. G. Neilson, Trial By Combat 5 (1891) ("A means of ensuring the truth in human testimony has been a thing desired in every age").

Neither can we accept respondent's argument that the § 3C1.1 sentence enhancement advances only "the impermissible sentencing practice of incarcerating for the purpose of saving the Government the burden of bringing a separate and subsequent perjury prosecution." *Grayson, supra,* at 53. A sentence enhancement based on perjury does deter false testimony in much the same way as a separate prosecution for perjury. But the enhancement is more than a mere surrogate for a perjury prosecution. It furthers legitimate sentencing goals relating to the principal crime, including the goals of retribution and incapacitation. See 18 U. S. C. § 3553(a)(2); *Mistretta* v. *United States,* 488 U. S. 361, 367 (1989). It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process. The perjuring defendant's willingness to frustrate judicial proceedings to avoid criminal liability suggests that the need for incapacitation and retribution is heightened as compared

with the defendant charged with the same crime who allows judicial proceedings to progress without resorting to perjury.

Weighed against these considerations, the arguments made by the Court of Appeals to distinguish *Grayson* are wide of the mark. The court is correct that rehabilitation is no longer a goal of sentencing under the Guidelines. 28 U. S. C. § 994(k); *Mistretta, supra,* at 367. Our lengthy discussion in *Grayson* of how a defendant's perjury was relevant to the potential for rehabilitation, however, was not meant to imply that rehabilitation was the only permissible justification for an increased sentence based on perjury. As we have said, the § 3C1.1 enhancement serves other legitimate sentencing goals. Neither does our cautionary remark that the enhancement in *Grayson* need not be imposed "in some wooden or reflex fashion" compel invalidation of § 3C1.1, as the Court of Appeals believed. When contested, the elements of perjury must be found by the district court with the specificity we have stated, so the enhancement is far from automatic. And that the enhancement stems from a congressional mandate rather than from a court's discretionary judgment cannot be grounds, in these circumstances, for its invalidation. See *Chapman* v. *United States,* 500 U. S. 453, 467 (1991); *McMillan* v. *Pennsylvania,* 477 U. S. 79, 92 (1986).

Upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines. That requirement is consistent with our precedents and is not in contravention of the privilege of an accused to testify in her own behalf. The judgment of the Court of Appeals is reversed.

*It is so ordered.*