# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-2884

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NATHANIEL SAUNDERS,

*Defendant-Appellant.*

_____

**Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 369-1—James B. Zagel**, *Judge.*

_____

ARGUED APRIL 18, 2003—DECIDED MARCH 1, 2004

_____

Before EASTERBROOK, KANNE, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Nathaniel Saunders's rap sheet contained three felony convictions prior to the incident that gave rise to this appeal: aggravated battery (1975), armed robbery (1980), and murder (1983). After he was released in 1999 from the prison term he was serving for the murder conviction, Saunders managed to stay out of trouble until December 20, 2000. On that evening he was involved in an altercation that resulted in his current

conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Saunders argues that the district court improperly applied Rule 403 of the Federal Rules of Evidence rather than Rule 609(a)(1) when it ruled that evidence of his prior conviction for murder would be admissible to impeach his testimony at trial. Saunders also claims that the district court erred when it adjusted his offense level two notches upward for obstruction of justice under U.S. Sentencing Guidelines (U.S.S.G.) § 3C1.1. Finding no merit to his arguments, we affirm.

## I

Saunders and Willie Allen got into a fight late in the evening on December 20, 2000. The scuffle left a bullet hole in Saunders's left jacket pocket. This incident led to federal charges against Saunders for violating 18 U.S.C. § 922(g)(1), which bars convicted felons from possessing guns that have traveled in interstate commerce. At trial, the parties stipulated that Saunders had a prior felony conviction that was "punishable by a term of imprisonment of more than one year." His only defense against the § 922(g)(1) charge was to claim that he was not in possession of the firearm.

At trial, the government informed Saunders that if he elected to testify that he was not in possession of a firearm, it would impeach his testimony with evidence of his prior felony convictions. Saunders objected on the basis of FED. R. EVID. 403 and 609(b) to the introduction of the 1975 and 1980 convictions, and the district court agreed that the government could not use these convictions to impeach Saunders. The court ruled, however, that evidence of Saunders's 1983 murder conviction was admissible with a limiting instruction directing the jury to consider it ex-

clusively for purposes of impeaching Saunders's testimony that he was not in possession of a gun.

In addition to evidence of the prior murder conviction, which Saunders's own lawyer elicited from him on direct examination, the jury also heard the testimony of four government witnesses, each of whom helped to establish that Saunders possessed a firearm that evening. The first was Carrie Slater, who witnessed the fight between Saunders and Allen. She testified that earlier in the evening Saunders showed her a gun and then put it in his jacket pocket. Carrie further explained that she, Saunders, and her sister Earline Slater, then got into Saunders's car with Saunders sitting in the driver's seat, Earline in the front passenger seat, and Carrie in the back seat. According to Carrie, Saunders reached back, handed her his gun and told her to "put it up", meaning to "put it up under the seat." As the three sat in Saunders's car, a third Slater sister—Linda Slater—arrived with her boyfriend Willie Allen. Carrie testified that Saunders got out of his car, but before doing so asked her to hand him his gun, which she did. Saunders then approached Allen's car where the two began to argue. Earline joined them and Carrie got out of Saunders's car to watch the commotion from the street. She then saw a police car approach and called out to alert Saunders who began to walk away when Allen grabbed him from behind. According to Carrie's testimony, the two struggled to the ground. One of Saunders's hands remained in his left jacket pocket. The police approached and Carrie testified that she heard a single gunshot. At the time of the gunshot both Allen and Saunders were on the ground and both had one hand in Saunders's jacket pocket. On re-direct examination Carrie testified that she did not see anything in Allen's hand when he put it into Saunders's jacket pocket.

Two additional government witnesses provided testimony that contradicted Saunders's testimony that he did not have a gun on him that evening. Earline testified that

while Saunders and Allen struggled to the ground, Saunders had his hand in his jacket pocket and that a gun was fired as the two lay on the ground. Although Earline testified that she never saw Saunders give or receive a gun from her sister Carrie while the three sat in his car, she later testified that she saw Saunders throw an object that she could not identify under a car. Earline testified that she then saw the police retrieve a gun from under the car.

The government also called Special Investigator Charles Hollender of the Chicago Police Department, who was the arresting officer and who was present at the scene when the gun was fired. Hollender testified that he heard the gunshot, saw down feathers fly from Saunders's coat, and then saw the gun "slide from under Mr. Saunders to beneath a car." Hollender further testified that following his arrest, Saunders told him that he carried a gun because "you never know what these young dudes are going to do," a statement Saunders denied making.

Finally, Joseph Thibault of the Chicago Police Department's Forensic Science Center testified that his examination of Saunders's jacket revealed evidence that "was consistent with a contact shot, which means the muzzle of the firearm was in contact with the lining of the jacket." After sorting through the down feathers in the jacket, Thibault "was able to pretty quickly locate some unburnt gunpowder." On cross-examination, Thibault conceded that he could not tell from his examination of Saunders's jacket who fired the gun.

Following Thibault's testimony the government rested and Saunders took the stand. His account of the evening was different to the extent that he claimed to have felt a hard object in his back when Allen grabbed him from behind. According to Saunders, the two struggled to the ground and the gun went off. Saunders claimed that he then removed Allen's hand from his pocket along with the

gun. On cross-examination Saunders explained the sequence of events leading up to the shooting as follows: "We were in the snow, we slipped, both of our hands and the gun was in my pocket when the gun went off."

The defense rested following Saunders's testimony, and the jury returned its verdict finding him guilty of violating § 922(g)(1). Several months later the district court held a sentencing hearing, at which time the government moved for and was granted a two-level upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice. Saunders now appeals his conviction and sentence.

## II

### A

Saunders claims that he is entitled to a new trial because the district court, relying on the wrong rule of evidence, allowed the jury to hear evidence of his prior conviction for murder. As an initial matter, we must decide whether Saunders is barred from challenging the district court's evidentiary decision by the rule set forth in *Ohler v. United States*, 529 U.S. 753 (2000).

In *Ohler,* the Supreme Court held that a defendant may not appeal an evidentiary ruling allowing evidence of a prior conviction if the defendant herself actually introduced the prior conviction, even if a proper contemporaneous objection was made. *Id.* at 760. This challenge is foreclosed on appeal because a defendant knowingly waives her claim when, as a strategic matter, she introduces the prior conviction in order to deprive the government of its full impeachment effect on cross-examination. *Id.* at 757-58. Where tough trial decisions are concerned, the Supreme Court has made it clear that a defendant must live with the consequences that flow from her choices. *Id.* at 758-59. In *Ohler*, this meant that after trying and failing to

keep evidence out, the defendant who preemptively introduced prior conviction evidence to lessen its sting waived her right to appeal the initial ruling.

This case is the same in all material respects. Saunders objected to the introduction of evidence of his prior murder conviction on the ground that the probative value of the evidence of his prior conviction was substantially outweighed by its prejudicial effect. The district judge disagreed and ruled that the evidence could come in through cross-examination if Saunders decided to testify. Saunders asserts, and the government concedes, that the district judge relied on the wrong rule of evidence in granting the government's motion. Rather than looking to FED. R. EVID. 403, as it did, the court should have consulted FED. R. EVID. 609(a)(1) in considering whether to allow evidence of Saunders's prior murder conviction. Saunders seizes on this error to distinguish *Ohler*. He notes that in *Ohler*, there was no claim that the district court considered the wrong rule of evidence in deciding to admit the prior crimes evidence; this distinction, he urges, should permit him to avoid the *Ohler* rule.

But such an exception would swallow up the *Ohler* rule—who would appeal if there were no claim that the district court make a mistake? Just as in *Ohler*, Saunders was faced with a decision. He could have chosen not to testify and thus precluded the government from using his prior murder conviction as an impeachment tool. Or he could have testified, as he chose to do, and in doing so, he could have risked not raising his prior conviction preemptively. He did neither; he chose instead to testify on his own behalf and to raise the prior conviction. In those circumstances, the principle animating *Ohler* applies notwithstanding any possible error in the district court's evidentiary ruling. Therefore Saunders has waived his opportunity to appeal the district court's application of the incorrect evidentiary rule.

Because Saunders waived his claim, we need not consider whether it was plain error for the district court to allow evidence of his prior murder conviction under FED. R. EVID. 403 rather than FED. R. EVID. 609(a)(1).

**B**

Saunders also challenges the district court's imposition of a two-level enhancement in his offense level for the obstruction of justice under U.S.S.G. § 3C1.1. The reason the court gave for doing so was that Saunders had perjured himself in his trial testimony. In *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), the Supreme Court clarified when a sentence may be enhanced for obstruction of justice under § 3C1.1 on the basis of perjured testimony. For sentence enhancement purposes, the Court adopted the definition of perjury set forth in the federal criminal perjury statute—"false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." 507 U.S. at 94 (quoting 18 U.S.C. § 1621). A court may impose the two-level enhancement for obstruction of justice based on perjury when it "makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* at 95. Whether the *Dunnigan* standard was met in Saunders's case is a question of law that we review *de novo*; any fact findings that the district court made in order to reach its conclusion are reviewed for clear error. *United States v. McGiffen*, 267 F.3d 581, 591 (7th Cir. 2001).

Saunders first asks that we reverse his sentence because the district court failed to make the type of explicit fact findings that the Supreme Court has said are needed in order to justify a sentence enhancement under § 3C1.1. *Dunnigan*, 507 U.S. at 95 ("[I]f a defendant objects to a sentence enhancement resulting from her trial testimony,

a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out."); see also *McGiffen*, 267 F.3d at 592; *United States v. Gage*, 183 F.3d 711, 716-17 (7th Cir. 1999). This requirement is met, we have found, "[a]s long as the trial court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt." *United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002).

Here, the court's findings were too skimpy. The judge merely observed that Saunders took the stand and told "a lie which no one would believe," but which constituted his defense. The error, however, is harmless. It is clear from the record before this court that Saunders took the stand in his defense and lied when he denied possessing a gun. Saunders's testimony that Allen put the gun in his pocket directly contradicted Carrie Slater's account of the events. The court found Saunders's version incredible, as did the jury, and the lack of more explicit findings on materiality or intent, although regrettable, does not justify remanding this case for resentencing.

Saunders also argues that the district court misunderstood the legal standard for increasing an offense level under § 3C1.1. The district court interpreted the Sentencing Guidelines as drawing "a clear distinction between conduct in Court and conduct outside of Court." From that premise the court reasoned that when a false statement is made in court, "even if it doesn't matter, perjury is an offense against the solemnity and dignity of the judicial system" and the obstruction of justice enhancement is warranted.

This was an incorrect statement of the law. Willful obstruction of justice includes perjury in court only when a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony."

*Dunnigan*, 507 U.S. at 94. If Saunders had perjured himself on an immaterial matter, even in court, there would be no obstruction of justice. *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999). But this false testimony was material. Under oath, Saunders denied possessing a gun on the evening of December 20, 2000. This testimony addressed the only contested issue at trial. Because Saunders lied about the central issue at his trial, the district court properly granted the government's motion for a sentence enhancement under § 3C1.1.

## III

For these reasons, Saunders's conviction and sentence are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*