In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1491

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GUY RINEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CR-115— **Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 13, 2013 — DECIDED FEBRUARY 10, 2014

Before MANION, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Guy Riney was
convicted in a jury trial of possession of a firearm after previ-
ously having been convicted of a felony, in violation of
18 U.S.C. §922(g)(1). Riney had many felony convictions and
enough violent crimes, though from many years earlier, to
qualify as an armed career criminal under both 18 U.S.C.
§924(e) and U.S. Sentencing Guideline §4B1.4. The district
court sentenced Riney to 204 months in prison. Riney appeals

both his conviction and sentence. He argues that the district court erred in denying his motion to quash his arrest and suppress evidence and then also erred in applying a two-level enhancement for obstruction of justice to the offense level in its sentencing guideline calculation. We affirm.

I.  *Motion to Suppress*

   A.  *The Facts and the District Court's Ruling*

On September 2, 2009, Chicago police officers John McKenna and Abraham Lara responded to a dispatch call regarding a shooting at the intersection of Franklin Boulevard and Drake Avenue. The call came in between 12:30 and 1:00 a.m. The officers learned that a victim had been shot by two black males wearing dark clothing who had fled on foot. The officers immediately began patrolling the area in their police car, searching for the shooting suspects. They encountered defendant Riney a few blocks away from the shooting. According to the officers, they first saw Riney sitting in a parked car with another black male on North Monticello Avenue. The officers believed the pair matched the general description of the shooting suspects. Officer Lara was driving. He pulled the police car behind the parked car in which Riney was sitting. The officers saw Riney get out on the passenger side. When the police car stopped, Officer Lara exited, drew his weapon, and yelled "show me your hands." Officer McKenna also exited and noticed what appeared to be a gun handle in Riney's waistband. He shouted commands at Riney, though at the evidentiary hearing he was not able to recall exactly what those commands were. Riney continued walking away at a fast pace. Officer McKenna followed and, based on his observation

and his belief that the suspects in the recent and nearby shooting were in the area, detained Riney between the porch and the fence of a house at 438 North Monticello. He conducted a pat-down search and recovered a loaded revolver from Riney. That weapon was the basis of the felon-in-possession charge against Riney. Officer McKenna then alerted Officer Lara to the presence of a weapon, secured the weapon, and turned it over to Lara.

Riney filed a pretrial motion to suppress the gun and quash his arrest, claiming that his search and arrest were illegal because the officers lacked probable cause. In support of his motion, he submitted his own affidavit. Statements within that affidavit contradicted the officers' version of their discovery of the revolver in several critical respects. In Riney's version, he claimed he had been standing on his porch when Officer McKenna ordered him to approach and then "forcefully grabbed me by my clothing and physically pulled me through the front outside gate of my home onto the sidewalk" before recovering the weapon.

Based on Riney's affidavit, Judge Pallmeyer conducted an evidentiary hearing over the course of four days on his motion to suppress.[1] Four witnesses testified, but Riney himself did not testify. Because Riney's affidavit was hearsay, it was not admitted as evidence at the hearing. None of the evidence offered at the hearing supported the version of events presented in Riney's affidavit. Without supporting evidence,

---

[1] Judge Pallmeyer presided over Riney's motion to suppress, and Judge Kennelly presided over Riney's trial and sentencing.

Riney's counsel changed tactics and argued that the officers did not have reasonable suspicion to stop Riney because it would have been impossible for Officer McKenna to have seen a gun in Riney's waistband at night while Riney was wearing dark clothing.

The district court rejected this argument, found the officers' testimony both "plausible" and "truthful," and denied Riney's motion to suppress. Based on Officer McKenna's observation of the weapon, the court found that the officers had reasonable suspicion to detain Riney and to conduct a pat-down search of his person. Riney appeals the district court's ruling.

B.  *Factual Impossibility and Officer Credibility*

In reviewing the denial of a motion to suppress, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010). Before the district court and on appeal, Riney has argued factual impossibility—because it was dark outside and Riney was wearing dark clothing, Officer McKenna could not have seen the handle of a gun in Riney's waistband—so that Officer McKenna's testimony that he saw a weapon was not credible.

We have no grounds to disturb the district court's factual findings. The court acknowledged that it was dark at the time of Riney's arrest but found that because the encounter between Riney and Officer McKenna occurred beneath a streetlight and because the handle of the Riney's gun was particularly large, it would not have been impossible for Officer McKenna to have seen the gun handle in Riney's waistband. The court's finding

was based on the available evidence and was not otherwise contradicted. We find no error in that finding.

Riney also challenges Officer McKenna's credibility because, contrary to "common sense" and "years of [Chicago Police Department] training and experience," (1) McKenna did not alert Officer Lara that he had seen a gun before seizing Riney; (2) McKenna did not draw his own weapon; (3) he did not immediately attempt to disarm Riney; (4) he did not try to have the shooting victim identify Riney; (5) his testimony contained small inconsistencies; and (6) Officer Lara did not also see the weapon in Riney's waistband before Officer McKenna seized him. In the face of these criticisms, the district court found that Officer McKenna's testimony was "plausible" and "truthful." We give great deference to a district judge's credibility findings on appeal. *United States v. Pabey*, 664 F.3d 1084, 1094 (7th Cir. 2011); *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010) (A district court's determination of witness credibility "can virtually never be clear error."). Riney does not approach that standard, especially since the officers' testimony was not contradicted. The district court did not err by crediting Officer McKenna's testimony.

C.  *Reasonable Suspicion*

Riney also argues that the officers' stop and search was unconstitutional because he was effectively arrested before Officer McKenna saw the weapon in his pants. Because Riney did not present this theory to the district court, we review it only for plain error, but only if Riney can show good cause for failing to make the argument in the district court. Fed. R. Crim. P. 12(e); *United States v. Figueroa*, 622 F.3d 739, 742 (7th Cir.

2010); *United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007). Even if Riney shows good cause, the district court's ruling will stand unless Riney "can demonstrate an error that is plain, that affects his substantial rights, and that seriously affects the fairness, integrity or public reputation of the judicial proceeding, effectuating a miscarriage of justice." *United States v. Iacona*, 728 F.3d 694, 699 (7th Cir. 2013). Riney fails to meet either of these high bars.

Riney does not attempt to show that he had good cause for failing to present his Fourth Amendment argument to the district court, and his argument fails on that basis alone. Even if Riney could overcome that initial threshold, he cannot show that the district court plainly erred by finding that his Fourth Amendment rights were not violated. Officers may detain a suspect for a brief investigatory stop if they have a "reasonable suspicion based on articulable facts that a crime is about to be or has been committed." *United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013), quoting *United States v. Carlisle*, 614 F.3d 750, 754–55 (7th Cir. 2010); see generally *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Officers must have "more than a hunch," but an investigatory stop does not require probable cause. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011), quoting *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). If the officer has an articulable suspicion that the person stopped is both armed and dangerous, the officer may conduct a pat-down search to determine whether the person is carrying a weapon. *Terry*, 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. This

is an issue that turns on the totality of the circumstances confronting the officer. *E.g., Snow*, 656 F.3d at 501.

When they encountered Riney, Officers McKenna and Lara were searching for two active shooters in the immediate area who were described only as black males wearing dark clothing. Within a short period of time they saw Riney, a black male, sitting in a car with another black male approximately two blocks away from the shooting. The officers stopped their car, and as Riney and Officer McKenna exited their respective cars, Officer McKenna saw what he believed to be the handle of a gun protruding from Riney's waistband. Officer Lara yelled "show me your hands" and Officer McKenna also directed commands at Riney, but Riney ignored them and continued walking away at a fast pace. At that point, Officer McKenna stopped Riney, frisked him, and recovered the weapon.

Riney contends that as soon as the officers began shouting commands at him, he was effectively arrested without probable cause and that any evidence recovered after that point—especially the revolver in his waistband—was recovered in violation of his Fourth Amendment rights. He cites *California v. Hodari D.*, 499 U.S. 621 (1991), for support, but under *Hodari D.* a person who flees from a show of authority by the police has not yet been seized. 499 U.S. at 626. Here, when the officers issued commands to Riney, he did not yield to their authority but walked away quickly. Given the circumstances—the proximity to a recent violent crime, the description of the shooters, Officer McKenna's observation of a weapon, Riney's flight—Officer McKenna had reasonable suspicion to stop and frisk Riney. See *Illinois v. Wardlow*,

528 U.S. 119, 124 (2000) (evasive behavior is a factor that contributes to a reasonable suspicion); *Terry*, 392 U.S. at 33 (Harlan, J., concurring) ("the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence"); *United States v. Patton,* 705 F.3d 734 ,738–39 (7th Cir. 2013) (suspect's refusal to comply with police orders and high incidence of crime in the area contributed to officer's reasonable suspicion); *Snow*, 656 F.3d at 501 (affirming pat-down of burglary suspect: "some crimes by their very nature are so suggestive of the presence and use of weapons that a frisk is always reasonable when officers have reasonable suspicion that an individual might be involved in such a crime") (internal quotation omitted); *United States v. Richmond*, 641 F.3d 260, 262 (7th Cir. 2011) (officer had reasonable suspicion sufficient for frisk when he saw handgun handle-shaped bulge in suspect's waistband); *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("[P]olice observation of an individual, fitting a police dispatch description of a person involved in a disturbance, near in time and geographic location to the disturbance establishes a reasonable suspicion that the individual is the subject of the dispatch."). The district court did not err, much less plainly err, in denying Riney's motion to quash or suppress evidence.

## II. *Obstruction of Justice Enhancement*

In sentencing Riney, the district court imposed a two-level enhancement for obstruction of justice based on the affidavit Riney submitted to the court in support of his motion to suppress. Sentencing Guideline §3C1.1 permits such an enhancement if:

> (1) the defendant willfully obstructed or impeded,
> or attempted to obstruct or impede, the administra-
> tion of justice with respect to the investigation,
> prosecution, or sentencing of the instant offense of
> conviction, and (2) the obstructive conduct related to
> (A) the defendant's offense of conviction and any
> relevant conduct; or (B) a closely related offense[.]

A finding that the defendant committed perjury supports this enhancement. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); U.S.S.G. § 3C1.1, App. Note 4(B).

"A defendant commits perjury if, while testifying under oath, he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Johnson*, 680 F.3d 966, 981 (7th Cir. 2012), quoting *Dunnigan*, 507 U.S. at 94. To apply the enhancement based on perjury, "the district court should make a finding as to all the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010). We review a district court's interpretation and application of the federal Sentencing Guidelines to the facts *de novo* and its findings of fact for clear error. *United States v. White*, 737 F.3d 1121, 1139 (7th Cir. 2013). Here, the sentencing judge failed to make a finding concerning Riney's willfulness. Though that omission was an error, it was harmless.

Judge Kennelly presided over Riney's trial and imposed the sentence. The obstruction issue was raised late, well after the judge had made his Guideline finding, but the judge listened

to the late and unexpected objection. He reviewed Riney's affidavit and found that his sworn description of his arrest and search was very different from the version of those events presented by Officer Lara's and Officer McKenna's testimony before Judge Pallmeyer, and that Judge Pallmeyer had credited the officers' testimony. Though Judge Kennelly had not reviewed the transcript of the evidentiary hearing, he heard the officers' testimony at trial and noted that the officers' trial testimony varied greatly from Riney's affidavit. Judge Kennelly then decided that the affidavit had been material to Judge Pallmeyer's decision to grant an evidentiary hearing on Riney's motion to suppress. However, he did not make an explicit finding as to whether the false statements in Riney's affidavit were willful before applying the two-level enhancement for obstruction of justice. On appeal, Riney argues that the district court erred by finding that the affidavit was material and by failing to find willfulness.

For these purposes a matter is "material" if it concerns information "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. §3C1.1, App. Note 6. Riney's affidavit concerned a material matter. The affidavit caused the district court to hold an evidentiary hearing to determine whether the critical evidence supporting Riney's prosecution—the gun—was obtained by Officers McKenna and Lara in violation of Riney's Fourth Amendment rights. Riney's arguments to the contrary simply miss the point that the affidavit caused the court to hold the evidentiary hearing. That made it material. And of course, if Riney's affidavit had been believed, it would have required suppression of the evidence, making it doubly material.

The lack of an explicit finding of willfulness is more problematic. Separate findings on each element of perjury, though preferable, are not necessary if the court makes a finding that "encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95. A finding that the defendant "lied" about a material matter can be sufficient in some cases. See *Johnson*, 680 F.3d at 982 (finding "that the defendant lied to the judge…about matters crucial to the question of the defendant's guilt" can be sufficient to support perjury finding), quoting *United States v. White*, 240 F.3d 656, 662 (7th Cir. 2001); see also *United States v. Grigsby*, 692 F.3d 778, 786 (7th Cir. 2012) (finding that defendant made a "clear material misrepresentation" in plea hearing testimony could support perjury finding for obstruction of justice enhancement). But, like perjury, lying involves *willfully* making a false statement. This record is sufficiently clear that the sentencing judge believed statements in Riney's affidavit were false, and the record would easily have supported a finding of willfulness. The differences between Riney's affidavit and the officers' testimony were stark and would have been difficult to attribute to faulty memory, confusion, haste, or other honest mistake. The fact remains, though, that there was no finding of willful falsity.

The error was harmless here, however, because the armed career criminal guideline trumped the effect of the obstruction enhancement, and there is no indication that the enhancement had any effect on the ultimate sentence. Riney's base offense level was 24, and the obstruction enhancement added two levels to 26. But the district court also found that Riney was an armed career criminal, a finding that Riney does not dispute,

which increased the offense level to 33. U.S.S.G. §4B1.4(b)(3)(B). With a criminal history category of VI, Riney's resulting Guideline range was 235 to 293 months in prison. The district judge sentenced Riney below that range, to 204 months in prison, which took into account the uncredited time that Riney had spent in state custody before the federal charge was filed and the judge's view that the age of Riney's convictions meant that criminal history category VI was a little too high to fit Riney.

Because of the finding that Riney was an armed career criminal, Riney's offense level and guideline range would have been the same regardless of the application of the obstruction of justice enhancement. See *United States v. Harmon*, 721 F.3d 877, 892 (7th Cir. 2013) (any error in dating drug distribution conspiracy was harmless; although finding affected criminal history, defendant's guideline range was the same whether sentenced under criminal history category I or II); *United States v. Carter*, 410 F.3d 942, 955 (7th Cir. 2005) (application of obstruction of justice enhancement was harmless error because it had no effect on defendant's sentencing range). And after making the obstruction finding, the district court never mentioned it again. The court's thoughtful explanation of the sentence focused on the particulars of this defendant and his offense, but not the obstruction issue. In the absence of any indication that the obstruction enhancement had any effect on the sentence, the absence of a willfulness finding was harmless.

The judgment of the district court is AFFIRMED.