In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 23-2938 & 23-2939

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMAL SHEHADEH,

*Defendant-Appellant.*

———————

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 3:21-cr-30022-SLD-JEH-1 and 3:14-cr-30046-SLD-JEH-1
**Sara Darrow**, *Chief Judge.*

———————

ARGUED DECEMBER 11, 2024 — DECIDED FEBRUARY 6, 2025

———————

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Jamal Shehadeh bought metham-
phetamine from a confidential informant, for which a jury
found him guilty. Although a career offender, he was sen-
tenced to a prison term far below his advisory range under
the United States Sentencing Guidelines.

Shehadeh appeals his conviction and sentence. He says the district court incorrectly precluded his cross-examination of a witness about several instances of past conduct. The district court also erred, Shehadeh argues, by applying the obstruction of justice sentencing enhancement under the Guidelines. U.S.S.G. § 3C1.1.

But Shehadeh waived his evidentiary argument. And although more detailed findings could have been made on the obstruction enhancement, any error was harmless, as the career offender enhancement controlled the length of Shehadeh's sentence. So, we affirm.

## I

## A

In March 2021, the Taylorville, Illinois Police Department executed a controlled drug buy involving Shehadeh. A confidential informant paid Shehadeh for methamphetamine. The exchange occurred inside the informant's house and was recorded on video. Shortly after Shehadeh left the house, officers arrested him. He was read his constitutional rights, which he waived, and he admitted to delivering the drugs.

To Shehadeh, though, the events at the informant's house were actually more complicated. According to him, he knew all along that the informant was working with the police department to set up the controlled buy. Shehadeh believed the "set up" would involve Chief Dwayne Wheeler, with whom he had a history of animus. As of March 2021, Shehadeh had filed numerous lawsuits against and had submitted federal information requests to the City of Taylorville, its police department, and Wheeler.

Based in part on Shehadeh's hatred toward Wheeler, and despite knowing it was a set-up, Shehadeh planned to show up to the controlled buy. He thought Wheeler would involve himself in the arrest. Shehadeh says he therefore orchestrated a scheme to humiliate Wheeler and the police. He would go to the informant's house, take the buy money, and leave without delivering any drugs. In other words, he says he intended to embarrass the police, not to commit a federal drug crime.

Yet Shehadeh did give drugs to the informant in exchange for cash. He offers an elaborate explanation for how and why that transaction occurred after all.

When Shehadeh arrived at the informant's house, he assumed audio and video recordings were taking place. Before the exchange, the informant led him into the basement where there were no recording devices. There, Shehadeh says, the informant smoked methamphetamine and showed him two bags. One contained methamphetamine, and Shehadeh says the informant told him the other contained road salt.

At that point, Shehadeh said he changed his plans. Instead of taking the buy money in exchange for nothing, he decided to slip the road salt into his pocket, intending to return it to the informant. That way, after arresting him, Wheeler and the police would be humiliated when they realized that Shehadeh never actually committed a drug crime.

In Shehadeh's telling, when he and the informant went back upstairs, Shehadeh gave the baggie he thought contained road salt to the informant in exchange for the buy money. He believed that "[a]t that point," he had "succeeded in ripping him off." Shehadeh was arrested, interviewed, and admitted distributing a substance to the informant. Of course,

the road salt was in fact methamphetamine, foiling Shehadeh's ruse.

**B**

A grand jury indicted Shehadeh with delivering methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Before trial, the government moved in limine to bar defense counsel from cross-examining Wheeler—who the government planned to call as a witness—about two past instances of misconduct: a misdemeanor driving under the influence conviction, and work-related discipline that predated his time with the Taylorville Police Department.

Shehadeh's counsel not only did not object to the government's motion, he described it as "well-founded." Counsel told the district court he did "not find anything in the supporting documentation that would indicate that any of those incidents involved [Wheeler] misleading or misrepresenting facts to a superior officer." In counsel's view, the incidents lacked impeachment value, so he did "not intend to cross-examine" Wheeler on them. Based on these representations, the district court asked if it was "fair to say that the motion in limine [was] unopposed." Defense counsel responded, "[t]hat is correct." The district court considered and granted the motion in limine, while reserving the possibility of reevaluating the ruling at another time.

Two months later, although still represented by counsel, Shehadeh filed a pro se "Defendant's Notice of Prior Bad Acts." The district court treated the filing as a motion in limine. Shehadeh sought a ruling from the court allowing cross-examination of Wheeler about two other topics: civilian complaints lodged against him, and a lawsuit about his

violation of a municipal ordinance that required officers to live within a certain radius of the city.

Like the first two topics, Shehadeh's counsel disclaimed the impeachment value of the civil complaints and the residency violation. Counsel noted they were all "just allegations on paper." Most of the complaints, for example, dealt with "brutality issues," which would have no bearing on Wheeler's "credibility." Counsel said he "thoroughly looked into" the matters and could not "convince [himself] that [the allegations] were proven to a point where the Court would allow them to be admitted."

The district court agreed. But it questioned whether there was anything to rule on since Shehadeh's counsel did not adopt his client's pro se motion. The court decided to strike the motion. In any event, it concluded the allegations were not "relevant to truth or dishonesty or to a matter at issue." For these reasons, the court precluded any inquiries into the third and fourth topics.

The case went to a two-day jury trial. Consistent with the district court's evidentiary rulings, defense counsel did not cross-examine Wheeler about the four topics. But counsel did inquire into Wheeler's training and experience, his relationship with the informant, and his supervision of the controlled buy.

Following the government's case-in-chief, Shehadeh testified and told the jury about his plan. On rebuttal, the government called the informant who testified that he did not have methamphetamine in his house before Shehadeh's arrival. Defense counsel also questioned the informant about his drug habits, legal troubles, work as an informant, and his later

admission that he took methamphetamine at the time of the sale. After closing arguments and instructions, the jury returned a guilty verdict.

At sentencing, the district court applied a two-level obstruction of justice enhancement under § 3C1.1 of the Guidelines after concluding that Shehadeh's defense was "somewhat fanatical"—presumably "fantastical"—and that he therefore perjured himself. Shehadeh also received the career offender enhancement. U.S.S.G. § 4B1.1(b)(2). The resulting Guidelines range was 262 to 327 months in prison. Shehadeh was sentenced to a 92-month prison term. He timely appeals.

## II

Shehadeh argues first that the district court abused its discretion by precluding him from cross-examining Wheeler about conduct in Wheeler's past. Shehadeh contends second that the district court erred by applying the obstruction of justice enhancement at his sentencing.

## A

Based on their prior interactions, Shehadeh says Wheeler was substantially biased against him and was motivated to lie about him on the stand. To Shehadeh, cross-examining Wheeler about Wheeler's numerous bad acts would have called into question Wheeler's credibility. The government responds that Shehadeh waived any objection to the district court's evidentiary rulings precluding cross-examination on the topics.

A defendant waives an argument when he "intentionally relinquishes a known right." *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019). "[W]aiver precludes appellate

review." *United States v. Heon Seok Lee*, 937 F.3d 797, 818 (7th Cir. 2019). Given that harsh consequence, "criminal defendants must make informed and intentional decisions when waiving their rights." *Flores*, 929 F.3d at 447. Whether a defendant has waived a right depends on the right at issue. *Id.* Sometimes, defense counsel may waive a right on behalf of the defendant. *New York v. Hill*, 528 U.S. 110, 114–15 (2000). Relevant here, a defendant is generally bound by counsel's decisions as to "what evidentiary objections to raise." *Id.* at 115. (citing *Henry v. Mississippi*, 379 U.S. 443, 451 (1965)). Indeed, "[a]bsent a demonstration of ineffectiveness, counsel's word" on evidentiary matters "is the last." *Id.*

Here, the defense did not "inadvertently fail[] to raise an argument in the district court." *Flores*, 929 F.3d at 447. Rather, the transcripts show that Shehadeh's counsel intentionally relinquished any objection to the district court's rulings on the four topics Shehadeh now argues he should have been allowed to use to impeach Wheeler.

Defense counsel said he did not object to the government's motion in limine. His view was that he could not in good faith impeach Wheeler's credibility with the instances of past conduct. Counsel had the last word on these evidentiary matters. *Hill*, 528 U.S. at 115.

Moreover, counsel's failure to accept a district court's invitation to renew a challenge to a motion in limine bars an appellate challenge to the merits of that ruling. *United States v. Hoyos*, 3 F.3d 232, 236 (7th Cir. 1993); *see Jenkins v. Keating*, 147 F.3d 577, 581 (7th Cir. 1998). The district court here said its ruling on the government's motion in limine was without prejudice and the parties could revisit the issue. If Shehadeh wanted to object, he should have done so during trial. *See*

*Wilson v. Williams*, 182 F.3d 562, 567 (7th Cir. 1999) (en banc) (after district court issues conditional pre-trial ruling, party must renew objection during trial to preserve litigant's position). But he never did, thus the argument was waived.

The same is true on Shehadeh's pro se notice concerning the third and fourth proposed topics for cross-examination—the civilian complaints and lawsuit against Wheeler. Defense counsel said he looked into the allegations, but he concluded they were not admissible evidence bearing on Wheeler's credibility. The district court accordingly struck the motion and deemed the allegations irrelevant.

Shehadeh counters that waiver should not apply. He points to two instances in which he says he preserved these evidentiary arguments: first during Wheeler's cross-examination, and second when Shehadeh tried to question Wheeler's credibility during his testimony.

During Wheeler's cross-examination, he admitted the informant used drugs during the drug buy, and that the officers did not search the residence to confirm there was not methamphetamine on the scene. Shehadeh submits, therefore, that Wheeler's credibility as a witness was in play.

But defense counsel never interjected to request that the district court revisit the motion in limine so this other information could be used to impeach Wheeler. The motion in limine was filed, the district court gave counsel a chance to oppose it, and counsel did not. Failure to renew an argument after explicit invitation to do so is a waiver.

Shehadeh also contends that when he took the stand, he tried to raise Wheeler's credibility, but the district court prevented him from doing so. In this way, Shehadeh submits, he

sought to preserve the issue for appellate review. He cites *United States v. Canady* for the general point that "[w]aiver principles should be construed liberally in favor of the defendant." 578 F.3d 665, 670 (7th Cir. 2009). To Shehadeh, the district court failed to offer conditions as to what must occur for the motion to be reconsidered.

But *Canady* involved different circumstances than here. There, the government moved in limine to exclude bad-acts evidence on the condition that Canady did not present a defense denying he committed the charged crime. Canady did not agree to the motion, as he wanted to present evidence predating the charged conduct. Because not opposing the government's motion essentially would have given up his defense, this court concluded that Canady's opposition to the motion was not necessarily inconsistent with the argument that the evidence should have been excluded. Canady thus received the benefit of the doubt and this court construed his decision not to object as a forfeiture rather than as a waiver. *Id.*

In contrast, during Shehadeh's testimony, he mentioned Wheeler's dishonesty. The government objected because there was no evidence in the record calling into question Wheeler's honesty. The district court sustained the objection. Nothing in the record shows that counsel re-raised a challenge to the district court's evidentiary rulings. At oral argument before us counsel agreed that was not done.[†]

---

[†] Oral Argument Tr. at 3:24–3:27.

If trial deadlines loomed, defense counsel could have asked for more time to raise this topic, but he did not. The district court did exactly what it should have done. We conclude that Shehadeh, through his counsel, waived any objection to the district court's evidentiary rulings on the scope of Wheeler's cross-examination.

**B**

Shehadeh next contends the district court erred when it ruled that he perjured himself and applied the obstruction of justice sentencing enhancement. U.S.S.G. § 3C1.1. This adjusted his offense level to 14, up two levels from his base offense level of 12. Shehadeh points out that the district court did not render independent findings that he made willful false statements satisfying the elements of perjury. The government responds that when Shehadeh testified, he did not just express his innocence. Instead, he gave a convoluted story trying to explain away the government's evidence that he had sold drugs.

We "review a district court's interpretation and application of the federal Sentencing Guidelines to the facts *de novo* and its findings of fact for clear error." *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014). "Defendants are subject to a two-level enhancement if they 'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." *United States v. Price*, 28 F.4th 739, 756 (7th Cir. 2022) (quoting U.S.S.G. § 3C1.1).

Courts often apply the obstruction enhancement when a defendant perjures himself. *Id.* As a best practice, "the district

court should make a finding as to all of the factual predicates necessary for a finding of perjury: false testimony, materiality, and willful intent." *United States v. Johnson*, 612 F.3d 889, 893 (7th Cir. 2010). That said, separate findings "are not always strictly necessary." *Price*, 28 F.4th at 756. And, in fact, the "requirement is met … '[a]s long as the trial court determined that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt.'" *United States v. Saunders*, 359 F.3d 874, 879 (7th Cir. 2004) (quoting *United States v. Holman*, 314 F.3d 837, 846 (7th Cir. 2002)). Moreover, this court will uphold a defendant's sentence if any error on the part of the district court was harmless. *See id.*

In concluding that Shehadeh perjured himself, the district court did not make express findings as to each element of perjury—false testimony, materiality, and willful intent. The government acknowledges this shortfall. Instead, the district court concluded there was "no way … the jury could have credited the defendant's testimony and still [have returned] a verdict of guilty."

To be sure, the court could have been more thorough in articulating the "factual predicates necessary for a finding of perjury." *United States v. Coleman*, 914 F.3d 508, 513 (7th Cir. 2019); *see Johnson*, 612 F.3d at 894 (remanding a sentence because "the district court did not articulate clear and separate findings as to the falsity, materiality, and intent of any statement"). We conclude that any error was harmless, however, and thus does not justify vacating and remanding the sentence. The record supports the district court's conclusion that Shehadeh perjured himself, and the career offender enhancement "trumped the effect of the obstruction enhancement." *Riney*, 742 F.3d at 791.

On the perjury conclusion, *Saunders* is instructive. There, this court determined that the district court's findings as to falsity, materiality, and intent "were too skimpy." *Saunders*, 359 F.3d at 879. Ultimately, though, the district court's failure to fully articulate its findings was harmless because "it [was] clear from the record … that [the defendant] took the stand in his defense and lied when he denied possessing a gun." *Id.* Indeed, the defendant's testimony was "directly contradicted" by another witness's "account of the events." *Id.* The district court thus found the defendant's "version incredible, as did the jury." *Id.* On that basis, "although regrettable," the district court's less-than-thorough findings did not warrant resentencing. *Id.*

The same is true here. Although the district court's findings were thin, the record supports the conclusion that Shehadeh lied on the stand. As an example, he testified he did not arrive at the controlled buy with methamphetamine. Rather, he said he took the baggie from the informant and delivered it back to him. But because his testimony about taking the road salt from the informant in the basement contradicted his testimony about his initial plan to take the buy money without providing anything in return, Shehadeh testified he changed his plan when he saw the baggie of salt.

Like *Saunders*, though, the evidence presented at trial directly conflicted with the defendant's story. 359 F.3d at 879. For instance, the informant testified there was no methamphetamine in his house before Shehadeh arrived. Shehadeh points out that the informant took methamphetamine in the basement during the controlled buy. The judge and jury were made aware of this fact and were free to weigh the credibility of the witnesses accordingly. *Cf. United States v. Conley*, 875

F.3d 391, 400 (7th Cir. 2017) ("A finder of fact is entitled to believe the testimony of even the most dishonest of witnesses."). As in *Saunders*, the district court and jury here found the defendant's version of events "incredible." 359 F.3d at 879.

Shehadeh offered a series of falsehoods in his testimony, which supported the district court's application of the obstruction enhancement. Notwithstanding the lack of express findings as to falsity, materiality, and intent, the district court's decision to apply the obstruction enhancement does not warrant a remand for resentencing.

As to the effect of the career offender enhancement, *Riney* informs our analysis. There, this court found it "problematic" that the district court failed to make "an explicit finding of willfulness." *Riney*, 742 F.3d at 791. In the end, however, the error was harmless because the district court also applied the "armed career criminal guideline," which "trumped the effect of the obstruction enhancement." *Id.* Riney's offense level increased from 24 to 26 based on the obstruction enhancement, but the armed career criminal enhancement automatically increased the offense level to 33. The resulting Guidelines range was 235 to 293 months in prison. *Id.*

In *Riney*, the district court imposed a below-Guidelines sentence of 204 months. *Id.* This court reasoned that "[b]ecause of the finding that [the defendant] was an armed career criminal, [his] offense level and guideline range would have been the same regardless of the application of the obstruction of justice enhancement." *Id.* This conclusion was supported by the district "court's thoughtful explanation of the sentence focused on the particulars of th[e] defendant and his offense, but not the obstruction issue." *Id.*

The reasoning in *Riney* applies here. Shehadeh's base offense level was 12, and the obstruction enhancement added two levels. But the career offender enhancement automatically increased his offense level to 34. U.S.S.G. § 4B1.1(b)(2). As in *Riney*, the effect of another enhancement far exceeded the effect of the obstruction enhancement. 742 F.3d at 791. Shehadeh's resulting Guidelines range was 262 to 327 months in prison.

Like in *Riney*, the district court sentenced Shehadeh far below the Guidelines range. He received a sentence of 92 months—170 months below the low end of the Guidelines range. (In comparison, Riney's sentence was 31 months below the low end of his Guidelines range.)

To complete the analogy to *Riney*, after the district court applied the obstruction of justice enhancement, it did not discuss the enhancement again. 742 F.3d at 791. At the same time, the court thoughtfully explained the 92-month sentence as balancing Shehadeh's risk to recidivate against the relatively low seriousness of this particular crime.

Any error did not impact Shehadeh's Guidelines range, so it was harmless. Instead, his status as a career offender drove his sentence. That status resulted in a Guidelines range that would have been the same even without the obstruction enhancement. Shehadeh chose not to challenge his career offender status. Therefore, we affirm his sentence.

*          *          *

The defendant's conviction stands, as any objections to the district court's evidentiary rulings were waived. His challenge to his sentence also fails. Any error by applying the obstruction enhancement was harmless because it did not

impact his Guidelines range, which was controlled by his career offender status. For these reasons, the district court is AFFIRMED.