**UNITED STATES of America, Appellee,**

v.

**Shontai WILLIAMS, Defendant,**

**Noel Garfield Facey, Defendant–Appellant.**

**No. 683, Docket 95-1359.**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1995.

Decided March 27, 1996.

---

Jo-Anne Weissbart, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, Brooklyn, NY), for Appellee.

Steven M. Statsinger, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Before: LUMBARD, WINTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Defendant Noel Garfield Facey appeals from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *District Judge*), imposing a fifty-one month prison sentence, a three year supervised release term, and a $100 special assessment. In calculating Facey's sentence, the district court enhanced his offense level by two points for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Because we agree with Facey that the district court's findings were inadequate to support an enhancement for obstruction of justice, we vacate the sentence and remand the case for further factual findings.

## BACKGROUND

On April 6, 1994, Shontai Williams was arrested at John F. Kennedy International Airport ("JFK"), after arriving on a plane from Jamaica, with 279 grams of cocaine in her possession. Williams immediately began to cooperate with law enforcement authorities and agreed to make contact with her co-conspirators so that they could arrange to pick her up at the airport. Williams attempted to call her boyfriend (and Facey's nephew), Wolford Anthony ("Tony") Goveia, at Facey's residence. Facey answered the phone, and although Williams initially asked for Goveia, she spoke only with Facey because Goveia was sick. During the conversation, Facey asked Williams where she was and, after being told that she was at JFK, told her that he would "be right there." After some additional conversation, Facey asked Williams why it had taken her so long. She informed him that she had been ill, but that she had "the stuff in the bag."

When Facey pulled up in his car outside the terminal, Williams, who was inside, waved at him to join her. Facey stayed near his car and beckoned Williams to come outside. Eventually, Williams went to Facey's car and, when she began to enter it, law enforcement agents arrested Facey. After Facey's arrest, Facey was taken into a police office in the terminal, and, as an officer began to read Facey his *Miranda* warnings, he stated: "I don't know what's going on here. I just came to pick up a fare. I have my nephew's car. I saw this girl and she looked hot to me, I was just trying to pick up a fare."

At trial, Facey admitted that he had given a false story to the officer following his arrest in an effort to disassociate himself from Williams. Facey swore that he had never met Williams prior to the evening of the arrest and that he only knew who she was through a photograph he had received from Goveia. According to Facey's trial testimony, he went to the airport to pick Williams up that evening because he wanted to meet her in the hope that the two would have a sexual encounter, either then or in the future. Facey denied any prior knowledge that Williams had imported cocaine into this country. He claimed that the circumstances leading to his arrest amounted to an unfortunate coincidence.

The jury convicted Facey on the indictment's first two counts, which charged him with conspiracy to import cocaine in violation of 21 U.S.C. § 963 and knowingly and intentionally importing cocaine in violation of 21 U.S.C. § 952(a). He was acquitted on the third count, in which he was charged with possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The Presentence Report ("PSR") calculated Facey's base offense level under the Sentencing Guidelines as twenty but recommended that he receive a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. The PSR stated:

> During the trial, [Facey] denied his guilt under oath. Trial transcripts reflect that while testifying under oath, the defendant denied any knowledge that Shontai Williams was carrying narcotics, or that he had any involvement with Shontai Williams' importation of cocaine. As a result of the defendant's false statements under oath, he committed perjury, thereby attempting to obstruct the administration of justice.

At his sentencing, Facey objected to the two-level enhancement. Although in convicting him the jury necessarily rejected his testimony, he argued that he had not committed perjury. The government contended that the defendant had falsely denied most, if not all, of the material issues of fact testified to by the witnesses against him. Moreover, he had admitted that his statements at the time of his arrest were untrue. The district court found that

> [b]ased upon the whole record that I have seen, the testimony that I have heard, I must, on this occasion [agree] with the probation department. I do think that the defendant did obstruct justice. The mere fact that once he was arrested he told the untruth, that he came to the airport to pick Ms. Chante [sic] Williams up, because he was a cab driver attempting to make a fare, that in and of itself, I think, is obstruction of justice. But the whole record supports the conclusion that the defendant

did obstruct justice. Therefore, I am not going to take away the two points for obstruction of justice.

Facey argues that these findings are inadequate to support an obstruction of justice enhancement. We agree.

## DISCUSSION

■ The government properly concedes that the district court's reliance on Facey's statements to the officer at the time of his arrest was improper. Under the Sentencing Guidelines, a materially false statement to a law enforcement official constitutes an obstruction of justice when it "significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, Application Note 3(g); *see United States v. Mafanya*, 24 F.3d 412, 415 (2d Cir.1994). The district court did not find, nor could it have found on this record, that Facey's denials to the officer "significantly obstructed or impeded" the investigation into Facey's crime. Given the information as to the conspiracy received by the officers from Williams, Facey's false custodial statements alone were insufficient to support the obstruction of justice enhancement.

■ The government contends that the enhancement was justified because Facey committed perjury at trial. *See* U.S.S.G. § 3C1.1, Application Note 3(b). The Supreme Court, in *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993), defined perjury under § 3C1.1 as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." The *Dunnigan* decision clarified that while "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding," the district court is only required to "make[ ] a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Id.* at 95, 113 S.Ct. at 1117. We have construed this language as requiring the district court to find that "the defendant knowingly made a false statement under oath." *United States v. Onumonu*, 999 F.2d 43, 47 (2d Cir.1993). Thus, "sepa-

rate findings of facts ... are ... not required as long as a general finding of obstruction ... tracks those factual predicates necessary to support a finding of perjury." *United States v. Catano–Alzate*, 62 F.3d 41, 42 (2d Cir.1995) (per curiam) (quotation omitted).

■ Here, the district court fell short of making the necessary findings. Putting aside its reference to Facey's custodial statements, the court found only that "[b]ased upon the whole record that I have seen [and] the testimony I have heard," Facey obstructed justice. The record does not contain the required finding that Facey knowingly made a false statement under oath.

Nor may we infer that the district court made sufficient findings when it stated that it agreed with the probation department. We need not decide whether the "independent findings" required by *Dunnigan* can ever be made by reference to a presentence report since here the conclusions set forth in the PSR were insufficient to support a perjury enhancement. In stating only that "[a]s a result of the defendant's false statements under oath, he committed perjury, thereby attempting to obstruct the administration of justice," the PSR appears to equate false statements with perjury, and omits the necessary finding that Facey, in making his false statements, acted with the requisite intent to commit perjury. *See Onumonu*, 999 F.2d at 46 ("*Dunnigan* stands for the proposition that district courts must make findings as to each element of perjury.").

■ Finally, the government argues that Facey's testimony was so inherently untruthful that the factual prerequisites to a perjury enhancement are obvious. *See Catano–Alzate*, 62 F.3d at 42–43. While that may be true, it cannot relieve the district court of the burden of making its own independent findings. Nothing in *Dunnigan* can be read to suggest that a separate finding of willful perjury is unnecessary where the perjury is obvious. Of course, in a case where the defendant has clearly lied on the stand, the district court need do nothing more to satisfy *Dunnigan* than point to the obvious lie and find that the defendant knowingly made a

false statement on a material matter. The obviousness of the falsehood, though, does not obviate the need for the finding by the district court that willful perjury has occurred.

## CONCLUSION

The sentence of the district court is vacated and the case is remanded for resentencing following a finding as to whether Facey willfully testified falsely under oath as to a material matter.