**UNITED STATES of America, Appellee**

v.

**Luis AGUDELO, Defendant–Appellant.**

**Docket No. 04–2223CR.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 31, 2005.

Decided: July 13, 2005.

Louis R. Aidala, New York, NY, for Defendant–Appellant.

Joshua A. Goldberg, Assistant United States Attorney (Peter G. Neiman, Assistant United States Attorney, on the brief), for David N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Before: POOLER, B.D. PARKER, Circuit Judges, and CASTEL,* District Judge.

---

* The Honorable P. Kevin Castel, United States District Judge for the Southern District of New York, sitting by designation.

B.D. PARKER, JR., Circuit Judge.

Luis Agudelo appeals from a judgment of the United States District Court for the Southern District of New York (Richard Owen, J.), sentencing him principally to 97 months' imprisonment after a jury found him guilty on heroin-related charges. *See* 21 U.S.C. §§ 841(b)(1)(B), 846. On appeal, Agudelo challenges both his conviction and sentence. We affirm Agudelo's conviction in a separate summary order and consider only his challenges to his sentence in this opinion.

Agudelo seeks resentencing on two grounds: (1) he argues that the District Court abused its discretion in awarding a two-point enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1; and (2) he claims that his Sixth Amendment rights were violated when the District Court enhanced his sentence based on facts not found by a jury or admitted by him. *See United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). With respect to Agudelo's first ground, we hold that the District Court erred in imposing the obstruction of justice enhancement based on its finding that Agudelo committed perjury, but not on the separate ground that Agudelo threatened a cooperating witness. Were we still in a pre-*Booker* world, we would simply affirm, for any error the District Court committed in finding that Agudelo committed perjury was harmless in light of the independent basis for awarding the obstruction of justice enhancement. As Agudelo's second argument suggests, however, we are not in such a world. After *Booker,* we must remand to determine whether the District Court would have sentenced Agudelo differently if it had known the Guidelines were advisory. *See United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).

We first address the District Court's treatment of U.S.S.G. § 3C1.1. Following *Booker,* district courts remain under a "continuing duty to 'consider' [the Guidelines], along with the other factors listed in [18 U.S.C. § ] 3553(a)." *Crosby,* 397 F.3d at 111. Moreover, "[t]he applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan.*" *Id.* at 112. Given the importance of the Guidelines even after *Booker,* as well as our concern regarding how the District Court applied § 3C1.1 in this case, we write to clarify the application of that enhancement.

## BACKGROUND

We focus principally on facts relating to the sentencing questions at issue. Agudelo and several co-defendants were arrested on August 9, 2002, after law enforcement agents conducting surveillance of them discovered 675 grams of heroin in a car that Agudelo's co-defendants were driving. The defendants were charged with conspiracy to distribute and possess heroin and with distributing and possessing with intent to distribute 100 grams or more of heroin. Agudelo's three co-defendants pled guilty.

Agudelo proceeded to trial, and the government's main witness was Luis Posada, a co-defendant who testified under the terms of a cooperation agreement. Posada's testimony, as well as a plethora of other evidence, demonstrated that Agudelo helped arrange a drug transaction between Posada and another co-defendant that culminated in the August 9 meeting. At the conclusion of the trial, the jury convicted Agudelo on both counts of the indictment.

The government subsequently requested a sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1 on two independent grounds. First, the government contended that Agudelo had committed perjury by submitting a knowingly

false affidavit in support of his pretrial suppression motion. In the affidavit, Agudelo averred that during his post-arrest interview, law enforcement agents continued to question him after he asked to speak to an attorney. At the suppression hearing, the two law enforcement agents who interviewed Agudelo testified that he had not, in fact, asked for a lawyer at this time. Crediting the agents' testimony, the District Court denied the suppression motion.

Second, the government claimed that an obstruction enhancement was warranted because, while Posada and Agudelo were incarcerated together awaiting trial, Agudelo had repeatedly attempted to intimidate Posada in order to influence his testimony. Posada testified at a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), that on several occasions he had received messages from fellow prisoners that Agudelo wanted to meet him in the prison library. At the first two meetings, Posada informed Agudelo that he was planning to plead guilty, and Agudelo told Posada that he should not say anything about their drug deals. At a third meeting, Agudelo again told Posada not to talk about their drug dealings, and threatened Posada that if he were to testify against him, Agudelo would "make a case against [him] for kidnapping." Posada testified that he understood Agudelo to be referring to Posada's efforts to collect an old drug debt from him in the mid–1990s, but he denied ever having attempted to kidnap Agudelo. Posada further testified that two or three days before trial, Agudelo repeated the same threat and, again, admonished Posada not to testify against him.

The District Court, crediting Posada's testimony, concluded that Agudelo was subject to the obstruction of justice enhancement on both grounds. Relying on *United States v. Lincecum*, 220 F.3d 77 (2d Cir.2000) (per curiam), the court found that, because Agudelo's affidavit could have influenced the court's disposition of the suppression motion and because it was knowingly false, the requirements of § 3C1.1 had been met. The court also found that the enhancement was warranted because Agudelo had intended to intimidate Posada to influence his testimony at trial.

The obstruction of justice enhancement raised Agudelo's offense level from 28 to 30, and from a 78–97 month sentencing range to a 97–121 month range. The District Court sentenced Agudelo principally to 97 months' imprisonment and three years' supervised release.

## DISCUSSION

### I. Standard of Review

■ On review of a district court's decision to enhance a defendant's sentence for obstruction of justice, we accept the court's findings of facts unless they are clearly erroneous. *See Lincecum*, 220 F.3d at 80. We review *de novo* a ruling that the established facts constitute obstruction of justice, giving "due deference to the district court's application of the guidelines to the facts." *Id.* (internal quotation marks omitted); *see also United States v. Peterson*, 385 F.3d 127, 140 (2d Cir.2004) (discussing the "mixed standard of review" to which obstruction of justice enhancements are subject). We recently explained in *United States v. Garcia*, 413 F.3d 201, 221–22, 2005 WL 1444146, at *15–*17 (2d Cir. June 21, 2005), why these standards of review continue to apply even after *Booker*.

### II. Perjury

■ Section 3C1.1 authorizes a two-level upward adjustment:

[i]f ... the defendant ... attempted to obstruct or impede[ ] the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and ... the obstructive conduct related to ... the defendant's offense of conviction and any relevant conduct ....

U.S.S.G. § 3C1.1. As the Supreme Court has explained, an enhancement for obstruction of justice is appropriate when a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Thus, we held in *United States v. Zagari*, 111 F.3d 307 (2d Cir.1997), that before applying an obstruction enhancement based on perjury, the sentencing court must find by a preponderance of the evidence "that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter." *Id.* at 329; *cf. Garcia*, 2005 WL 1444146, at *15 n. 15 ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*."). In other words, "[b]efore imposing the adjustment, the district court must find that the defendant 'consciously act[ed] with the purpose of obstructing justice.'" *Lincecum*, 220 F.3d at 80 (quoting *United States v. Case*, 180 F.3d 464, 467 (2d Cir.1999)).

█ Agudelo contends that the District Court had no basis for finding that his affidavit was knowingly false, as opposed to being the result of confusion, mistake, or faulty memory. In the affidavit, he stated, in part, that "at one point, I told the agents that I wanted to speak to a lawyer but they did not cease their questioning. Instead, they told me, in substance, that I would be able to see a lawyer at a later point in time." He argues that merely because the court credited the testimony of the law enforcement agents that he did not ask to see a lawyer does not necessarily mean he gave knowingly false testimony in his affidavit. Such a *per se* rule would contravene *Dunnigan*, 507 U.S. at 94, 113 S.Ct. 1111, Agudelo contends, because it would leave no room for consideration of possible mistake, confusion, or honest belief. We agree.

In finding that Agudelo's statement was knowingly false, the District Court relied primarily on *Lincecum*, where a defendant had moved to suppress statements he made to Secret Service agents at the time of his arrest. In support of his motion, Lincecum submitted an affidavit stating that he had repeatedly asked to speak with an attorney, but had been denied the opportunity. *See Lincecum*, 220 F.3d at 78–79. The affidavit described in careful detail three requests Lincecum allegedly made to the agents to speak with a lawyer. *See id.* at 79. However, at a pre-trial hearing, each of the agents testified that he had never made such a request. *See id.* The government also produced a waiver-of-rights form that the defendant had signed, in which he waived his right to speak with an attorney. *See id.* The district court concluded that the affidavit was "so detailed that [the court was] persuaded by clear and convincing evidence that Mr. Lincecum when he signed it had to have known it was false." *Id.*

We affirmed, noting that "[w]here the district court finds that the defendant 'has clearly lied' in a statement made 'under oath,' the 'court need do nothing more to satisfy *Dunnigan* than point to the obvious lie and find that the defendant knowingly made a false statement on a material matter.'" *Id.* at 80 (quoting *United States v. Williams*, 79 F.3d 334, 337–38 (2d Cir.

1996)). Here, the District Court, citing *Lincecum*, similarly concluded that Agudelo's affidavit contained an "obvious lie" and, therefore, was knowingly false; thus, he was subject to the enhancement.

Our case is distinguishable from *Lincecum*. *Lincecum*'s three detailed statements reeked of fabrication because he could not have simply misremembered so much detail. On the other hand, Agudelo's two sentences averring that he had asked for a lawyer were far more vague.[1] Moreover, his statement that, "they told me, in substance, that I would be able to see a lawyer at a later point in time," was actually supported by the cross-examination of one of the agents. Defense counsel asked the agent: "In substance, did either of you ever tell Mr. Agudelo that he would be able to speak to a lawyer in about two weeks or some other period of time?" The agent responded, "I may have described to him the process which would take place after he's brought down to the marshals and pretrial and all that stuff." The agent also later admitted having told Agudelo that he would be able to have a lawyer with him for his initial appearance. The agent could not otherwise recall any details of the conversation but agreed that it was his "custom" to "describe ... the process" to individuals who were under arrest. Thus, rather than willfully fabricating the affidavit in order to obstruct justice, Agudelo may well have simply misunderstood the agent's comments or misremembered the chronology of the conversation. These are possibilities that *Dunnigan* requires us to take seriously, and that compel us to find that the District Court committed clear error in finding, on the record before us, that Agudelo submitted a knowingly false affidavit.

The risks inherent in extending *Lincecum* even to Agudelo's vague affidavit are significant. First, any time a defendant like Agudelo submits an affidavit that is sufficient to justify a suppression hearing, he would automatically be subject to an enhancement for obstruction of justice if the suppression motion is denied. Such a rule effaces *Dunnigan*, where the Supreme Court held that an enhancement is appropriate only where the defendant acts "with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Dunnigan*, 507 U.S. at 94, 113 S.Ct. 1111. Extending *Lincecum* to these facts would also raise the troubling prospect that future defendants might either be deterred from pressing arguably meritorious Fourth Amendment claims or unfairly punished when they do. The commentary to § 3C1.1 highlights this possibility. It states, "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right," and cautions that "not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1 comment. (n.2). For these reasons, we conclude that the court clearly erred in finding that Agudelo committed perjury and applying the enhancement on that basis.

### III. Threats

The District Court did not, however, apply the obstruction enhancement solely on the ground of perjury. It also con-

---

1. We are unpersuaded by the government's argument that because Agudelo stated at one point in his affidavit that he "[did] not recall receiving any so-called *Miranda* warnings," his affirmative statement that he "told the agents [he] wanted to speak to a lawyer" was necessarily an intentional falsehood. Although the latter statement is more definitive than the former, we cannot conclude on this basis alone that Agudelo was intending to deceive, as opposed to being mistaken or confused.

cluded that Agudelo attempted to intimidate Posada in order to influence his testimony. Crediting Posada's testimony at the *Fatico* hearing that Agudelo threatened to have him charged with kidnapping if Posada testified against him, the District Court applied the enhancement on this additional ground.[2] The commentary to § 3C1.1 notes that, in addition to instances of perjury, the enhancement applies when a defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a co-defendant, witness, or juror, directly or indirectly, or attempt[s] to do so." U.S.S.G. § 3C1.1 comment. (n.4). Accordingly, we have held that "[a] threat to a potential witness qualifies as an attempt to obstruct justice and fully warrants a sentencing enhancement pursuant to § 3C1.1." *United States v. Gaskin*, 364 F.3d 438, 465 (2d Cir.2004).

■■■ .The District Court did not clearly err in finding that Agudelo attempted to influence Posada's testimony by threatening him. As we noted in *Gaskin*, "[w]e generally defer to a sentencing court's findings as to what a speaker meant by his words, and how a listener would reasonably interpret those words." *Id.* at 466 (internal quotation marks omitted). Agudelo contends that the court should not have credited Posada's testimony because he had a poor memory and was otherwise not credible. For example, during his testimony, he could not recall certain names or places, including the name of the place where he was incarcerated. Conceding that Posada may, in certain respects, have been a problematic witness, still no basis exists for finding that the District Court erred in crediting Posada's testimony.

Moreover, contrary to Agudelo's contention, it is irrelevant that several of the alleged incidents of coercion occurred at a time when Posada had not yet entered into a cooperation agreement and was not yet scheduled to testify. As we said in *Peterson*, 385 F.3d at 140, an obstruction enhancement based on threats "applies where the targeted co-defendant or witness is still only a potential co-defendant or witness."

■■■ Finally, Agudelo argues that the threats he allegedly made concerning bringing kidnapping charges against Posada would have been so bizarre and so clearly idle as to render inherently implausible the conclusion that they were made at all or made with the intent to influence Posada's decision to cooperate or testify. Viewed in isolation, the allegation that one inmate would bring charges against another for an alleged drug-related kidnapping attempt seven years earlier is perhaps so implausible that it might have been clear error to find that the threat was made at all, or with the intent to influence the other inmates' decision to cooperate or testify. *See Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir.2004) (noting that a district court's credibility finding may be set aside for clear error if a witness's "story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Here, however, there is ample other evidence that Agudelo sought to influence Posada not to cooperate or testify. Posada testified to a number of meet-

---

**2.** Agudelo argues that the District Court also awarded the enhancement based on "triple hearsay" evidence indicating that Posada had learned from a friend in the United States that friends in Colombia were going to make him "pay" for cooperating with the govern-

ment. However, the District Court clearly indicated that its holding rested on the kidnapping threat, which was made directly to Posada, and not on his testimony that was based on hearsay.

ings and attempts at persuasion other than the admittedly bizarre comments about filing kidnapping charges.

█ In sum, the District Court was justified in enhancing Agudelo's sentence on the grounds that he attempted to intimidate Posada. Because this constitutes a sufficient basis for the two-level enhancement for obstruction of justice, the court's error in relying on the additional ground that Agudelo committed perjury was harmless.

## IV. *Crosby* Remand

█ In light of *Booker*, 125 S.Ct. at 756, we remand this case for further proceedings in conformity with *Crosby*, 397 F.3d at 117. A *Crosby* remand gives the sentencing judge an opportunity to determine whether a materially different sentence would have been imposed had the judge known the Sentencing Guidelines were advisory rather than mandatory at the time of sentencing. *See United States v. Williams*, 399 F.3d 450, 460 (2d Cir. 2005). If a materially different sentence would have been given, plain error has occurred and the judge must resentence the defendant; if not, the original sentence remains in place. *See Crosby*, 397 F.3d at 118–19. Any appeal taken from the district court following this remand can be initiated only be filing a new notice of appeal. *See* Fed. R.App. P. 3, 4(b).

## CONCLUSION

The case is remanded for further proceedings in conformity with *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005).