United States v. Pena

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2013

(Submitted: March 12, 2014    Decided: May 7, 2014)

Docket No. 13-1787

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

              Appellee,

        - v.-

ONEIL PENA,

              Defendant-Appellant.

- - - - - - - - - - - - - - - - - - -x

Before:              JACOBS and POOLER, Circuit Judges, Román, District Judge.[*]

Oneil Pena appeals from a judgment of the United States District Court for

the Southern District of New York (Preska, C.J.), convicting him of conspiracy to

---

[*] The Honorable Nelson S. Román, United States District Judge for the Southern District of New York, sitting by designation.

distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. Specifically, Pena challenges the district court's application of the sentencing enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. For the following reasons, we vacate the district court's judgment and remand for resentencing consistent with this opinion.

> DON D. BUCHWALD, Kelley Drye & Warren LLP, New York, New York, <u>for</u> <u>Appellant</u>.
>
> ANDREA L. SURRATT (Brent S. Wible, <u>on</u> <u>the brief</u>), <u>for</u> Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, <u>for</u> <u>Appellee</u>.

PER CURIAM:

Oneil Pena was convicted of one count of conspiracy to distribute and possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 846. At sentencing, the district court applied a two-level enhancement to Pena's offense level for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on written statements made in support of his motion to suppress. On appeal, Pena challenges the applicability of the enhancement on the ground that the relevant statements do not demonstrate a willful intent to commit perjury. For

the following reasons, we vacate the district court's judgment and remand for resentencing consistent with this opinion.

**BACKGROUND**

Prior to boarding a plane from the Dominican Republic to New York in April 2012, Pena ingested 57 pellets containing a total of 534 grams of cocaine. Upon his arrival at John F. Kennedy International Airport, customs officials acted on a tip that he was smuggling drugs, stopped him and conducted a private patdown, without result. Pena consented to an x-ray, which revealed the pellets. After his arrest, he was interviewed by an agent of the Drug Enforcement Administration ("DEA"), and confessed.

Pena was indicted on one count of conspiracy to distribute and possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 846. On August 6, 2012, Pena moved to suppress the pellets as evidence on the grounds that: the officers lacked reasonable suspicion; the x-ray consent was made under duress; and the confession was the result of an improper two-step interrogation under the rationale set forth in Missouri v. Seibert, 542 U.S. 600 (2004).

3

Pena's written declaration in support of his motion contained the following four statements relevant to this appeal: 1) prior to giving consent for the x-ray, he requested a lawyer at least seven times; 2) the officers extracted the consent by threatening physical force; 3) he confessed after the x-ray in response to questioning by *customs officers* (as opposed to confessing *later*, after questioning by *DEA agents*); and 4) he did not fully comprehend the import of a <u>Miranda</u> waiver form.

The parties disputed these events at the hearings on Pena's motion, conducted in September and October 2012.

As to seeking counsel: Pena claimed that his (at least) seven requests for an attorney were made after the patdown yielded no contraband and the customs officers presented Pena with an x-ray consent form. Officer Sanchez testified that Pena never requested an attorney; Officers Saleh and Dillon stated that Pena did seek assistance of counsel. Officer Dillon could not recall how many times Pena requested counsel, and Officer Saleh was never asked.

As to the threat of force: Officer Dillon testified that at least one of the officers told Pena that if he did not sign the consent form, they had "other ways" to "make this happen." Suppression Hr'g Tr., App. at 196-97. Pena then signed the consent form, and the x-ray revealed the pellets inside Pena's digestive tract.

As to who posed questions, and when:  After the x-ray, Pena was handcuffed to a medical bed while he expelled the pellets in the presence of the customs officers and medical personnel.  The customs officers testified that they never asked Pena anything more than whether he had ingested the narcotics; they never questioned him about who gave him the drugs or to whom he was delivering them.  The officers cited a policy against asking such questions, but no copy of the policy was produced (and the prosecutor believed no such policy existed).  Pena claimed that the customs officers' questions went beyond this limited scope.  Nevertheless, it is at least clear that Pena confessed to the customs officers that he had swallowed the pellets.

As to the <u>Miranda</u> waiver: Later that day, Special Agent Martinez of the DEA arrived to speak with Pena.  He presented Pena with a <u>Miranda</u> waiver form, which Pena signed.  Pena then provided a detailed confession to Agent Martinez.

The court denied Pena's suppression motion in October 2012.  In her oral ruling, Judge Jones found the government's evidence to be more credible.  In two respects, the court observed that its findings were "contrary" to the statements in Pena's supporting declaration: Pena requested an attorney just once, and he was

5

not threatened with physical force. Suppression Hr'g Tr., App. at 340, 342. In light of this ruling, Pena pled guilty in December 2012.

After Judge Jones retired from the bench, the case was transferred to Chief Judge Preska for sentencing. Citing the supposedly false statements in Pena's declaration, the government requested a two-level sentencing enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Chief Judge Preska reviewed the record of the suppression motion and noted the findings of falsity that Judge Jones had made. The enhancement was applied, which raised the Guidelines range to 37-46 months from 30-37 months. Pena was sentenced to 37 months' imprisonment.

## DISCUSSION

The Sentencing Guidelines provide for a two-level enhancement of a defendant's offense level if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. "'[T]o base a § 3C1.1 enhancement . . . upon the giving of

perjured testimony, a sentencing court must find that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter.'" United States v. Salim, 549 F.3d 67, 73 (2d Cir. 2008) (alteration in original) (quoting United States v. Zagari, 111 F.3d 307, 329 (2d Cir. 1997)). "In other words, '[b]efore imposing the adjustment, the district court must find that the defendant consciously act[ed] with the purpose of obstructing justice.'" United States v. Agudelo, 414 F.3d 345, 349 (2d Cir. 2005) (alteration in original) (quoting United States v. Lincecum, 220 F.3d 77, 80 (2d Cir. 2000) (per curiam) (quotation marks omitted)). The intent to obstruct must be unambiguous. United States v. Kelly, 147 F.3d 172, 178 (2d Cir. 1998). The enhancement may not be imposed if the false testimony may have been "'a result of confusion, mistake, or faulty memory.'" Agudelo, 414 F.3d at 349 (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)).

"On review of a district court's decision to enhance a defendant's sentence for obstruction of justice, we accept the court's findings of facts unless they are clearly erroneous." Id. at 348. "We review *de novo* a ruling that the established facts constitute obstruction of justice, giving 'due deference to the district court's application of the guidelines to the facts.'" Id. (quoting Lincecum, 220 F.3d at 80).

7

"[A] ruling that those facts constitute obstruction or attempted obstruction under the Guidelines . . . is a matter of legal interpretation and is to be reviewed *de novo*." United States v. Brown, 321 F.3d 347, 351 (2d Cir. 2003)(quotation marks omitted).

**I**

Pena averred that, when asked to sign the x-ray consent form, he requested the assistance of an attorney at least seven times. The district court's credibility-based finding is that Pena requested an attorney just once. However, if such a credibility determination, without more, automatically amounted to a finding of willful intent to mislead, nearly every denial of a motion to suppress would support an enhancement for obstruction of justice. The Agudelo Court, 414 F.3d at 350, recognized the substantial risks stemming from using the obstruction-of-justice enhancement in these circumstances.[1]

---

[1] The risks inherent in extending Lincecum even to Agudelo's vague affidavit are significant. First, any time a defendant like Agudelo submits an affidavit that is sufficient to justify a suppression hearing, he would automatically be subject to an enhancement for obstruction of justice if the suppression motion is denied. Such a rule effaces Dunnigan, where the Supreme Court held that an enhancement is appropriate only where the defendant acts "with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Dunnigan, 507 U.S. at 94, 113 S. Ct. 1111. Extending Lincecum to these facts would also raise the troubling prospect that future defendants might either be deterred from pressing arguably meritorious Fourth

The circumstances here walk a line between <u>Agudelo</u> and <u>Lincecum</u>. The defendant's affidavit in <u>Lincecum</u> described in "careful detail" three requests he made for an attorney. <u>Agudelo</u>, 414 F.3d at 349. The Court ruled that the enhancement was available because "Lincecum's three detailed statements reeked of fabrication because he could not have simply misremembered so much detail." <u>Id.</u> at 350. In <u>Agudelo</u>, we distinguished <u>Lincecum</u> on the ground that the defendant's written statements "were far more vague" and "Agudelo may well have simply misunderstood the agent's comments or misremembered the chronology of the conversation." <u>Id.</u>

Pena's case is more akin to <u>Agudelo</u> than to <u>Lincecum</u>. The verisimilitude in the <u>Lincecum</u> statements (describing the when, where, and the response of the police) supported an inference that the affiant must either be telling the truth or committing perjury. <u>See</u> <u>Lincecum</u>, 220 F.3d at 79. Pena's claim of (at least) seven requests does not support such an inference. There are no details; multiple requests could have been made to different persons; and he had plenty on his

Amendment claims or unfairly punished when they do. The commentary to § 3C1.1 highlights this possibility. It states, "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right," and cautions that "not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1 comment. (n.2).

414 F.3d at 350 (alteration in original).

mind other than counting his requests for counsel. Without details, there is nothing here that could be categorically contradicted by the police. Indeed, two of the officers at the suppression hearing were never asked or did not recall how many times Pena requested an attorney, and a third officer's testimony was contradicted by the other two. We conclude the district court committed clear error in determining that Pena willfully made false statements regarding his request for an attorney.

## II

Pena averred that the officers threatened physical force to procure his consent to the x-ray. The finding to the contrary is not clear error. On the other hand, the record is just as clear that Pena could have interpreted the circumstances in that way. One of the officers told him that if he did not consent to the X-ray, there were other ways to "make this happen." Pena, who was isolated, surrounded by customs officers, and without counsel, could reasonably put a sinister and threatening cast on this statement. Because it is possible that Pena "simply misunderstood the agent's comments," Agudelo, 414 F.3d at 350, it was clear error to find Pena committed perjury with regard to this statement.

**III**

Pena averred that, for several hours prior to a Mirandized interrogation with a DEA agent, he was subjected to off-and-on questioning by customs officers; but the customs officers all denied asking him any questions regarding the drugs. The district court found that "at most the defendant may have made the statement to medical clinic personnel that he had swallowed 57 pellets." Suppression Hr'g Tr., App. at 343.

Under the undisputed circumstances, Pena may have reasonably believed that his statement was true. Pena was handcuffed to the medical center's bed and the customs officers frequently came in and out of the room. It may well be, as the district court found, that Pena was responding to questions put by the medical personnel; at the same time, however, Pena had sufficient reason to believe they were connected in some capacity to the customs officers who were also present. Therefore, Pena's statement does not support the finding of willful intent to mislead.

**IV**

Whether or not Pena understood the <u>Miranda</u> waiver form (he averred he did not) was immaterial to the motion to suppress. Pena's motion was never based on a theory that he was coerced into signing the <u>Miranda</u> form, or that his waiver was involuntary. His motion argued that law enforcement conducted an improper two-step interrogation, a technique in which the warnings are given in the middle of an interrogation after procuring an unwarned confession. <u>See</u> <u>Missouri v. Seibert</u>, 542 U.S. 600, 611-17 (2004). Under that theory, Pena accepted that he was properly given a <u>Miranda</u> warning. Whether he understood the waiver form is, therefore, immaterial. Because the obstruction-of-justice enhancement only applies to material statements, <u>see</u> <u>Salim</u>, 549 F.3d at 73, the district court erred in applying the enhancement based on this statement.

**CONCLUSION**

For the foregoing reasons, we vacate the judgment of the district court and remand for resentencing consistent with this opinion. While we hold that the four statements discussed above do not show a willful intent to provide false testimony, this opinion does not foreclose the district court from considering whether other statements warrant an enhancement for obstruction of justice.