14-2267 (L)
United States v. Thompson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Submitted: October 28, 2015          Decided: December 9, 2015)

Docket No. 14-2267-cr(L), 14-2599-cr(Con.)
_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

MICHAEL THOMPSON and TYLON VAUGHN, a/k/a Bucky B,

*Defendants-Appellants*,

CHRISTOPHER MORLEY, a/k/a White Boy Chris, GREGORY ACCETURA, a/k/a Leg, BERNARD BYRD, a/k/a BB, a/k/a Chip, JASON DAURIA, MICHAEL DELUCA, CHRISTEN EDWARDS, WILLIAM FITZGERALD, a/k/a Quay, JESSIE HOPKINS, a/k/a Wes, KAI JACKSON, a/k/a Killer Kai, RICHIE JONES, a/k/a Slick, BRITT MARTIN, a/k/a Big Baby, ANDREW MELILLO, MICHAEL MELILLO, ANTHONY MICARELLI, ROBERT MORRIS, JOSEPH RAO, MARQUIS WINFREY, a/k/a Quisy, ANTWAIN YOPP, a/k/a Skeletor, ROBERT MELILLO, JR., a/k/a Mike,

*Defendants*.

_____

B e f o r e:

KATZMANN, *Chief Judge*, POOLER and CHIN, *Circuit Judges*.

_____

Appeal from a judgment of conviction and sentence of 168 months' imprisonment and 5 years' supervised release entered on June 25, 2014, against Defendant-Appellant Michael Thompson, and appeal from a judgment of conviction and sentence of 144 months' imprisonment and 5 years' supervised release, entered on June 27, 2014, and amended on July 29, 2014, against co-Defendant-Appellant Tylon Vaughn, both by the United States District Court for the District of Connecticut (Burns, *S.J.*), following a jury trial. With respect to Thompson only, we hold that the district court failed to make the requisite finding of specific intent to obstruct justice before imposing an obstruction-of-justice sentencing enhancement. For this reason, and for the reasons stated in the accompanying summary order issued herewith, we AFFIRM in part and VACATE in part, and we REMAND only Thompson's case for further proceedings consistent with this opinion.

_____

MARC H. SILVERMAN (S. Dave Vatti and Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, CT.

JONATHAN J. EINHORN, New Haven, CT, *for Defendant-Appellant Michael Thompson*.

Sebastian O. DeSantis, New London, CT, for *Defendant-Appellant Tylon Vaughn*.

_____

2

PER CURIAM:

Defendant-Appellant Michael Thompson appeals his sentence following a jury trial and judgment of conviction. In this opinion, we address only Thompson's objection to the decision of the United States District Court for the District of Connecticut (Burns, *S.J.*) to impose a two-level sentencing enhancement for obstruction of justice based on a recommendation in Thompson's presentence report ("PSR").[1] Thompson contends that the district court erred by not making a finding of specific intent to obstruct justice. We agree.

## BACKGROUND

On May 22, 2012, members of a Drug Enforcement Agency task force went to Thompson's apartment with an arrest warrant. After placing Thompson in handcuffs and conducting a protective sweep of the apartment, the officers asked if Thompson would consent to a search of the apartment. Thompson eventually consented, but he later moved to suppress two digital scales and $2,000 in cash obtained from the apartment, arguing that his consent was coerced because the

---

[1] We address in an accompanying summary order the remainder of Thompson's and co-Defendant-Appellant Tylon Vaughn's arguments on appeal.

officers threatened to arrest his sister and girlfriend unless he consented. The district court held an evidentiary hearing on June 25, 2013, and it denied Thompson's motion in a written order on September 17, 2013.

In finding that Thompson's consent was voluntary, the district court's suppression order focuses on the exact words that Officer David Rivera said to Thompson and the timing of these words in relation to Thompson's consent. The district court concluded that Rivera informed Thompson that he was seeking a warrant and that everyone in the apartment *could* be arrested if evidence of contraband was found. According to the district court, "Rivera chose his words with care and the difference between what he said and what he did not say is significant and dispositive." *United States v. Thompson*, No. 3:12CR97(EBB), 2013 U.S. Dist. LEXIS 132541, at *17 (D. Conn. Sept. 17, 2013) (citing *United States v. Guzman*, 724 F. Supp. 2d 434, 443 (S.D.N.Y. 2010); *United States v. Perez*, 198 F. Supp. 2d 406, 414–15 (S.D.N.Y. 2002)).

In reaching this conclusion, the district court stated that it found credible the testimony of Rivera and Officer Steven Silk and it found not credible

4

Thompson's testimony.[2] Specifically, the district court took issue with the following exchange between Thompson and his counsel during direct examination at the hearing. Thompson testified, "[The officers] got on the phone, they threatened me with – they said if they search the house and they found anything, they was going to take my sister and my girlfriend at the time to jail." App. 69–70. Thompson's attorney then rephrased his statement, "So they told you they would be taking your sister and your girlfriend to jail unless you agreed to a voluntary search, is that your testimony." App. 70. Thompson replied, "Yes." *Id.* The district court observed:

> Significantly, Thompson did not say that Rivera told him that the women would be arrested if he refused to give his consent. It was only in response to his attorney'[s] next question, which was leading and mischaracterized what Thompson had just said, that Thompson agreed that Rivera threatened to arrest his sister and girlfriend if he refused to consent to a search.

*Thompson*, 2013 U.S. Dist. LEXIS 132541, at *10.

---

[2] The district court's order also notes that Thompson's initial suppression motion "asserted that his consent to search was not voluntary because he was of an exhausted mental state and incapable of fully understanding the request by law enforcement to search his premises." *Thompson*, 2013 U.S. Dist. LEXIS 132541, at *2-3 n.1 (citation and quotation marks omitted). The district court did not rely on this change of theory as a basis for not crediting Thompson's testimony.

In comparison, Rivera testified, "I explained to [Thompson] that we were waiting to apply for a search warrant, and if anything was located, anybody in the apartment would be – that was all at the same time." App. 129. He then agreed with Thompson's attorney that he said something to the effect of, "Just so you know, we're waiting for a search warrant and of course if anything illicit is found here, anyone in the apartment is subject to arrest," *id.*, and that this statement was made about 25 minutes after Thompson initially refused consent and about 5 minutes before Thompson gave consent, App. 127–129.

Silk agreed with Thompson's attorney that he heard Rivera say something to the effect of, "If we ever get a search warrant and we find something illicit or illegal here, anyone in the apartment is going to go to jail." App. 139. On redirect, the government asked Silk the following question:

> To clarify the discussion you had with Attorney Einhorn about words to that effect, did Officer Rivera state, if a search warrant is obtained, contraband is found, everyone in the apartment will be arrested? Or did he state something along the lines of, if a search warrant is obtained, contraband is found, everyone in the apartment could be arrested?

App. 140. Silk replied, "Yes, second portion, could be arrested." *Id.*

A jury later convicted Thompson of one count of conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, 280 grams or more of cocaine base, and an indeterminate quantity of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 841(b)(1)(C), and 846. Thompson's PSR recommended a two-level enhancement for obstruction of justice based on the June 25, 2013 suppression hearing, noting: "The Court expressly characterized Mr. Thompson's testimony as equivocal, inconsistent, and contradictory. The Court concluded that his conflicting testimony on this central issue could not be credited." Thompson PSR ¶ 25.

Thompson objected to the enhancement in his sentencing memorandum, contending that he "made [the disputed] statements believing that they were true and they reflect his state of mind at the time; they were not meant to be willfully false or misleading." Gov't App. 94. Thompson again objected to the enhancement at sentencing, but the district court did not address the enhancement or Thompson's objections. The district court merely stated, "Okay, I think the PSR accurately has calculated the guideline range." App. 1018. The district court also noted that it had read the parties' sentencing submissions

7

"several times," App. 1034, and that it would adopt the PSR's guidelines

calculations, App. 1021.

DISCUSSION

The U.S. Sentencing Guidelines provide for a two-level sentencing

enhancement for obstruction of justice, which includes perjury committed during

a suppression hearing. *See* U.S. Sentencing Guidelines Manual § 3C1.1 (U.S.

Sentencing Comm'n 2015); *United States v. Giraldo*, 80 F.3d 667, 680 (2d Cir. 1996),

*overruled on other grounds by Muscarello v. United States*, 524 U.S. 125 (1998).

"[I]f a defendant objects to a sentence enhancement resulting from her trial

testimony, a district court must review the evidence and make independent

findings necessary to establish a willful impediment to or obstruction of justice, or

an attempt to do the same, under the perjury definition [the Supreme Court has]

set out." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993); *see also United States v.*

*Norman*, 776 F.3d 67, 84 (2d Cir. 2015) (applying *Dunnigan*). That is, "to impose an

obstruction-of-justice adjustment, the court must make a finding of specific

intent." *Giraldo*, 80 F.3d at 680. Although "it is preferable for a district court to

address each element of the alleged perjury in a separate and clear finding," it "is

8

sufficient . . . if . . . the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95.

If the obstruction-of-justice enhancement is based on perjurious testimony, courts must apply the federal criminal perjury statute, 18 U.S.C. § 1621, which is violated if "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. Thus, "before applying an obstruction enhancement based on perjury, the sentencing court must find by a preponderance of the evidence 'that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter.'" *United States v. Agudelo*, 414 F.3d 345, 349 (2d Cir. 2005) (quoting *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997)). "In other words, 'before imposing the adjustment, the district court must find that the defendant consciously acted with the purpose of obstructing justice.'" *Id.* (alterations omitted) (quoting *United States v. Lincecum*, 220 F.3d 77, 80 (2d Cir. 2000)).

Contrary to the government's suggestion, we have made clear that a district court cannot satisfy *Dunnigan* simply by adopting a PSR's "conclusory statements" that the defendant committed perjury. *United States v. Ben-Shimon*, 249 F.3d 98, 103–04 (2d Cir. 2001) (per curiam). Instead, we have allowed a district court to rely on the PSR to impose an obstruction-of-justice enhancement only if the PSR "sets forth reasonably detailed findings in support of its conclusions." *United States v. Johns*, 324 F.3d 94, 98 (2d Cir. 2003).

Here, it is undisputed that the district court did not make a finding of specific intent to obstruct justice. The district court did adopt the PSR, but the district court's clear adoption of the PSR does not satisfy *Dunnigan* because the PSR itself does not "set[] forth reasonably detailed findings in support of its conclusions." *Id.* The PSR merely points to the district court's suppression ruling and the district court's conclusion that Thompson's "conflicting testimony on [the] central issue could not be credited." Thompson PSR ¶ 25.

The government contends that the PSR's reference to the suppression ruling in this manner is sufficient to satisfy *Dunnigan* in light of our previous holding in *United States v. Lincecum*. In that case, the defendant moved to suppress

statements made to law enforcement officers at the time of his arrest and submitted an affidavit describing in detail three requests to speak with an attorney that allegedly went unheeded. *Lincecum*, 220 F.3d at 78–79. At a suppression hearing, the agents testified that he never made such a request and they produced a waiver-of-rights form that he had signed. *Id.* at 79. The district court concluded that the affidavit was "so detailed that [the district court was] persuaded by clear and convincing evidence that Mr. Lincecum when he signed it had to have known it was false." *Id.* We affirmed, observing that "[w]here the district court finds that the defendant 'has clearly lied' in a statement made 'under oath,' the 'court need do nothing more to satisfy *Dunnigan* than point to the obvious lie and find that the defendant knowingly made a false statement on a material matter.'" *Id.* at 80 (quoting *United States v. Williams*, 79 F.3d 334, 337–38 (2d Cir. 1996)).

But the government overlooks a more recent case, *United States v. Agudelo*, in which the defendant submitted an affidavit stating: "[A]t one point, I told the agents that I wanted to speak to a lawyer but they did not cease their questioning. Instead, they told me, in substance, that I would be able to see a lawyer at a later

11

point in time." 414 F.3d at 349. The district court credited the agents' testimony that Agudelo made no such request, and it therefore imposed the obstruction-of-justice enhancement. *Id.* We reversed, agreeing with Agudelo's argument "that merely because the court credited the testimony of the law enforcement agents that he did not ask to see a lawyer does not necessarily mean he gave knowingly false testimony in his affidavit." *Id.* We further noted that "[s]uch a *per se* rule would contravene *Dunnigan* . . . because it would leave no room for consideration of possible mistake, confusion, or honest belief." *Id.*

Distinguishing the two cases, *Agudelo* observes that "Lincecum's three detailed statements reeked of fabrication because he could not have simply misremembered so much detail. On the other hand, Agudelo's two sentences averring that he had asked for a lawyer were far more vague." *Id.* at 350. In addition, on cross-examination, another agent appeared to support Agudelo's statement that the officers had told him he would be able to see a lawyer at a later point in time. *Id.* "Thus," we concluded, "rather than willfully fabricating the affidavit in order to obstruct justice, Agudelo may well have simply

12

misunderstood the agent's comments or misremembered the chronology of the conversation." *Id.*

Here, the PSR's barebones reference to the suppression ruling effectively adopts the per se rule we rejected in *Agudelo*, i.e., that any time a court credits officer testimony over that of a defendant, the defendant must have given knowingly false testimony. We reject that rule again here. Instead, if a defendant objects to an obstruction-of-justice enhancement based on perjurious testimony, district courts must make a finding of specific intent to commit perjury, which occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. To the extent the district court relies on the PSR for such a finding, the PSR must "set[] forth reasonably detailed findings in support of its conclusions" that are consistent with *Dunnigan*'s requirements. *Johns*, 324 F.3d at 98.

Finally, the government argues that any error regarding the obstruction-of-justice enhancement is harmless because the district court would have applied the

13

same sentence regardless of the enhancement. The government relies principally on the district court's statement at sentencing that it would have imposed the same sentence even if Thompson had received a two-level downward variance that the government had requested per Department of Justice policy in similar narcotics prosecutions. The suggestion is that the two-level downward departure would have cancelled out the two-level enhancement for obstruction of justice. But because of other errors we identify in the summary order accompanying this opinion, we cannot conclude that "the record indicates clearly that the district court would have imposed the same sentence in any event." *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam) (quoting *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009)). A remand for Thompson's resentencing is therefore appropriate.

## CONCLUSION

For the reasons stated herein and in the accompanying summary order, the judgment of the district court is AFFIRMED in part and VACATED in part, and Thompson's case is REMANDED for further proceedings consistent with this opinion.

14