17-197-cr
*United States v. Nicholson*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of June, two thousand eighteen.

PRESENT:     JON O. NEWMAN,
             JOSÉ A. CABRANES,
             SUSAN L. CARNEY,
                         *Circuit Judges.*

---

UNITED STATES OF AMERICA,

　　　　　　　*Appellee,*

　　　　　　　v.                                        17-197-cr

ROYDEL NICHOLSON,

　　　　　　　*Defendant-Appellant.*

---

FOR APPELLEE:                          JOHN J. FIELD, Assistant United States
                                       Attorney, *for* James P. Kennedy, Jr.,
                                       United States Attorney, Western District
                                       of New York, Rochester, NY.

FOR DEFENDANT-APPELLANT:               JAY S. OVSIOVITCH, Federal Public
                                       Defender's Office, Western District of
                                       New York, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 18, 2017 judgment of the District Court be and hereby is **AFFIRMED,** but the cause is **REMANDED** for resentencing.

Defendant-appellant Roydel Nicholson appeals from a January 18, 2017 judgment convicting him, following a jury trial, of three counts of mail fraud and one count of international money laundering. The District Court sentenced Nicholson principally to 87 months' imprisonment, to be followed by three years of supervised release, and ordered him to pay $145,794 in restitution. On appeal, Nicholson argues that (1) the District Court committed procedural error when it applied the vulnerable victim and obstruction of justice sentencing enhancements, (2) the District Court abused its discretion when it allowed a witness to testify about Nicholson's handwriting, and (3) the evidence was insufficient to support his convictions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

Nicholson was a victim-turned-"mule"[1] in the so-called "Jamaica Lottery Scam" (the "Scam"). In 2011, he received a letter informing him that he had won $15 million in the Jamaican lottery. There was only one catch: he had to pay local taxes before he could collect his prize. After sending $860 of his own money to a purported Lottery official (Mr. Peterson) in Jamaica, Nicholson agreed to allow Peterson to help him pay the balance of the taxes. Under the agreement, Peterson would send Nicholson money through third parties, and Nicholson would then send the money to Jamaica.

As it turned out, the third parties who sent Nicholson money included other victims of the Scam. One such victim was Henry Jessen, a nonagenarian from California. Between December 2012 and January 2014, Jessen sent Nicholson a total of $145,794 in certified checks and cash. Nicholson transmitted at least $41,050 of that money to individuals associated with the Scam. The record does not reveal how Nicholson disposed of the other $104,744 that he received from Jessen.

On April 24, 2015, federal agents arrested Nicholson. At the time of his arrest, he provided a written confession. A jury ultimately convicted Nicholson of three counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A). The jury found Nicholson not guilty on three additional counts of mail fraud.

At sentencing, the District Court applied a two-level vulnerable victim enhancement pursuant to U.S.S.G. § 3A1.1. The District Court applied the enhancement based on Mr.

---

[1] A "mule" is a "person hired to smuggle contraband." *Mule*, Black's Law Dictionary (10th ed. 2014). As used in this case, "mule" means a low-level participant in criminal activity.

2

Nicholson's own statement at the time of his arrest, the nature of this enterprise, and the repeat conduct from Mr. Nicholson. Joint App'x at 390. The District Court also applied a two-level enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because it found that Nicholson's trial testimony was "false, misleading, [and] contrary to the written statement that he made when he was arrested." Joint App'x at 390. The District Court sentenced Nicholson principally to 87 months' imprisonment, to be followed by three years of supervised release, and ordered him to pay $145,794 in restitution to Jessen.

This appeal followed.

\* \* \*

Nicholson first argues that the District Court committed procedural error at sentencing when it found, by a preponderance of the evidence, that the vulnerable victim and obstruction of justice sentencing enhancements apply. We review a sentencing court's factual findings "only for clear error." *United States v. Cavera*, 550 F.3d 180, 203 (2d Cir. 2008) (en banc).

*Vulnerable victim enhancement.* Nicholson contends that there was insufficient evidence to find that (1) he knew or should have known that Jessen was a vulnerable victim, and (2) he singled out Jessen because of his vulnerability. For this vulnerable victim enhancement to apply, "the defendant generally must have singled out the vulnerable victims from a larger class of potential victims." *United States v. Kerley*, 544 F.3d 172, 180 (2d Cir. 2008) (internal quotation marks omitted). That did not occur in this case. Nicholson's involvement in the Scam began when he himself became a victim of it. After being told that he had won the lottery, he was instructed by a "Mr. Peterson" to pay money to Peterson in order to collect his prize. Nicholson complied. Later, Nicholson began receiving money from other victims of the Scam, including Jessen. At Peterson's instruction, Nicholson wrote a letter to Jessen regarding a "final payment." Gov't App'x at 6. When Nicholson was charged with the Scam offense, he had never met or spoken to Jessen. Under these circumstances, the fact that scams of this sort typically target the elderly does not suffice to make the targeting requirement of the enhancement applicable to Nicholson.

Furthermore, Nicholson's statement at the time of his arrest that he was taking "money from Mr. Jessen who was elderly referred to me by Mr. Peterson," *id.* at 9, does not make clear whether Nicholson knew that Jessen was elderly during the offense, which is unlikely in the absence of any contact between them, or learned that fact only later when he met with the investigating officers. The burden was on the Government to prove that the enhancement applied. Finally, there was no "repeat conduct from Mr. Nicholson," Joint App'x at 390, only receipt of money *from* Jessen.

The vulnerable victim enhancement was not warranted. We will therefore remand for resentencing without this enhancement.

*Obstruction of justice enhancement.* Nicholson also argues that the evidence did not support the District Court's determination that he willfully and materially committed perjury when he testified at trial. *See United States v. Thompson*, 808 F.3d 190, 195 (2d Cir. 2015) (stating standard for the obstruction of justice enhancement). We disagree. At trial, Nicholson testified that he did not know he was serving as a mule from 2011 through 2014. But in his written confession, he stated that as early as October 2011, "I realized I was being scam[m]ed." Gov't App'x at 9. He further confessed: "At this time [October 2011] I realized I was also a part of the scam." *Id.* Moreover, the government presented evidence that Nicholson structured his transactions to avoid disclosing his identity as sender, and received a written warning from MoneyGram that he could be an accomplice to criminal activity. *Id.* at 16 (copy of written warning). In light of this evidence, the District Court reasonably found that Nicholson obstructed justice when he testified at trial that he did not know he was a mule.

\*　　\*　　\*

Nicholson next argues that the District Court abused its discretion when it permitted Inspector Mann to authenticate Nicholson's handwriting on a letter. "[L]ay witnesses who testify as to their opinion regarding someone's handwriting must not only meet the strictures of Rule 701,[2] but must also satisfy Rule 901(b)(2)[3] and have a familiarity with the handwriting which has not been acquired solely for purposes of the litigation at hand." *United States v. Samet*, 466 F.3d 251, 254 (2d Cir. 2006) (footnotes added). Here, Inspector Mann's testimony undoubtedly met the strictures of Rule 701. And because it was based on seeing Nicholson sign three documents at the time of his arrest—before the litigation had commenced—it satisfied Rule 901(b)(2). We thus conclude that the

---

[2] Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[3] Federal Rule of Evidence 901(b)(2) provides that a proponent of evidence can satisfy the requirement of authenticating or identifying the item by producing a "nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation."

District Court did not abuse its discretion when it permitted Inspector Mann to authenticate Nicholson's handwriting.

Finally, Nicholson contends that the evidence was insufficient to prove that he intended to defraud Jessen, to carry out mail fraud, or to aid and abet in the carrying out of mail fraud. "A defendant who makes such a challenge bears a heavy burden, since he must show that 'no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt.'" *United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010) (quoting *United States v. Schwarz*, 283 F.3d 76, 105 (2d Cir. 2002)). Nicholson has not met that burden. His written confession, the length of time he served as a mule, the structure of his transactions, the written warning from MoneyGram, the letter he sent to Jessen, and the testimony of his girlfriend all provided more than adequate grounds for a rational trier of fact to find beyond a reasonable doubt that he committed mail fraud and international money laundering. Accordingly, we conclude that Nicholson's challenge to the sufficiency of the evidence is without merit.

## CONCLUSION

We have reviewed all of the other arguments raised by Nicholson on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the January 18, 2017 judgment of the District Court, but we **REMAND** the cause for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk